SAFE

5116020

Cortlandt Town Center

*3/4/99mwh*

SHOPPING CENTER LEASE

EXECUTED 3/22/99

**SHOPPING CENTER** — **CORTLANDT TOWN CENTER** - Cortlandt, New York
**LANDLORD** — **CORTLANDT TOWN CENTER LIMITED PARTNERSHIP**, a New York limited partnership
**TENANT** — **TOWN CENTER DELI, INC.**

TABLE OF CONTENTS


**ARTICLE I - REFERENCE PROVISIONS, SHOPPING CENTER, LEASED PREMISES AND TERM**

Section 1 1 Reference Provisions
Section 1 2 Shopping Center, Leased Premises, and Term
Section 1 3 Acceptance of Leased Premises
Section 1 4 Quiet Enjoyment
Section 1 5 Parties to Have No Liability if Shopping Center Not Constructed

**ARTICLE II - RENT AND OTHER CHARGES**

Section 2 1 Minimum Annual Rent
Section 2 2 Percentage Rent
Section 2 3 Taxes
Section 2 4 Common Areas and Operating Costs
Section 2 5 Utilities Charges

**ARTICLE III - CONSTRUCTION OF LEASED PREMISES**

**ARTICLE IV - USE OF LEASED PREMISES**

Section 4 1 Use of Leased Premises
Section 4 2 Joint Opening of Shopping Center
Section 4 3 Continuous Operation by Tenant
Section 4 4 Additional Covenants of Tenant
Section 4 5 Signs, Awnings and Canopies
Section 4 6 Retail Restriction Limit

**ARTICLE V - INSURANCE REQUIRED OF TENANT**

Section 5 1 Insurance Required of Tenant
Section 5 2 Fire Insurance Rate and Requirements
Section 5 3 Waiver of Subrogation

**ARTICLE VI - REPAIRS AND MAINTENANCE**

Section 6 1 Repairs by Landlord
Section 6 2 Repairs and Maintenance by Tenant
Section 6 3 Inspection
Section 6 4 Obstructions

**ARTICLE VII - ADDITIONS AND ALTERATIONS**

Section 7 1 By Landlord
Section 7 2 By Tenant

**ARTICLE VIII - DAMAGE, DESTRUCTION OR CONDEMNATION OF THE LEASED PREMISES**

Section 8 1 Damage or Destruction
Section 8 2 Condemnation

**ARTICLE IX - MARKETING FUND/MERCHANTS' ASSOCIATION, MEDIA FUND, GENERAL PROMOTION FUND**

Section 9 1 Amounts
Section 9 2 Marketing Fund
Section 9 3 Merchants' Association
Section 9 4 Media Fund
Section 9 5 General Promotion Fund

**ARTICLE X - FINANCING**

Section 10 1 Financing
Section 10 2 Subordination

**ARTICLE XI - DEFAULT BY TENANT**

Section 11 1 Default
Section 11 2 Landlord's Rights on Default
Section 11 3 Non-Waiver Provisions
Section 11 4 *Force Majeure*
Section 11 5 Enforcement Expenses

**ARTICLE XII - OTHER PROVISIONS**

Section 12 1 Definition and Liability of Landlord
Section 12 2 Relationship of the Parties
Section 12 3 Security Deposit
Section 12 4 Indemnity
Section 12 5 Damage to Property or Persons
Section 12 6 Assignment, Subletting, or Licensing
Section 12 7 Surrender of Premises and Holding Over
Section 12 8 Lien of Landlord for Rent, Taxes and Other Sums
Section 12 9 Liens
Section 12 10 Landlord's Right of Cancellations
Section 12 11 Interest
Section 12 12 Late Payments
Section 12 13 Consents
Section 12 14 Waiver of Right of Redemption
Section 12 15 Notices
Section 12 16 No Broker
Section 12 17 Short Form Lease
Section 12 18 Entire and Binding Agreement
Section 12 19 Provisions Severable
Section 12 20 Captions, Underlining, Line-outs
Section 12 21 Rule Against Perpetuities
Section 12 22 Warranty and Authority
Section 12 23 Irrevocable Offer
Section 12 24 Rider to Lease

**EXHIBIT A - SHOPPING CENTER PREMISES**

**EXHIBIT B - CONSTRUCTION**

Cortlandt Town Center

*3/4/99mwh*

## SHOPPING CENTER LEASE

THIS LEASE made and entered into as of the 22nd day of March, 1999 by and between **CORTLANDT TOWN CENTER LIMITED PARTNERSHIP**, a New York limited partnership ("Landlord"), and **TOWN CENTER DELI, INC.**, ("Tenant")

### ARTICLE I
### REFERENCE PROVISIONS, SHOPPING CENTER, LEASED PREMISES AND TERM

Section 1 1 **Reference Provisions.**

(a) **LEASED PREMISES**--cross hatched and/or designated as space **"A-5"** on **EXHIBIT A** annexed hereto and made a part hereof and containing approximately **2,000** square feet The Leased Premises are in a building in a Shopping Center known as **Cortlandt Town Center** located (or to be located) on **3131 East Main Street** in or near the Town or City of **Cortlandt**, County of **Westchester**, State of **New York**

(b) **TERM**--shall be for a period of **five (5) years** commencing as provided in Section 1 2 As used in this Section 1 1, the term "year" shall mean each successive twelve (12) calendar month period commencing on the first day of a calendar month If the Term commences on a day other than the first day of a calendar month, then the period commencing with the first day of the Term and ending on the last day of the calendar month in which the Term commenced shall be added to the first year of the Term

(c) **MINIMUM ANNUAL RENT**--Thirty Six Thousand Four Hundred and No/100 Dollars ($36,400 00) per year for the first, second and third years of the Lease Term, Forty Six Thousand and No/100 Dollars ($46,000 00)) per year for the fourth and fifth years through the balance of the Lease Term

(d) **PERCENTAGE RENT AND BASE**--an amount equal to six percent (6%) of Gross Sales in excess of a base of Six Hundred Six Thousand Six Hundred Sixty Seven and No/100 Dollars ($606,667 00) per year for the first, second and third years of the Lease Term Seven Hundred Sixty Six Thousand Six Hundred Sixty Seven and No/100 Dollars ($766,667 00) per year for the third and fourth years through the balance of the Lease Term, as specified in Section 2 2

(e) **USE**--For the retail sale of bagels and other related food products and sandwiches, beverages for on/off premises consumption with sit down facilities for up to nineteen (19) person, also for the sale of daily newspapers, and for no other purpose FOR THE USE OF SALE OF ALL DELI RELATED ITEMS, BREAKFAST LUNCH, HOT AND COLD FOODS, BAGELS AND CATERED FOODS. DONUTS, CAKES, CANDY, ICE CREAM etc. LOTTO

(f) (I) **MARKETING FUND/MERCHANTS' ASSOCIATION:** None ~~per month for the first year of the Lease Term, subject to annual increase as specified in Section 9 1 2~~

(ii) **MEDIA FUND:** None ~~per month for the first year of the Lease Term, subject to annual increase as specified in Section 9 1 2~~

(iii) GENERAL PROMOTION FUND None ~~as the initial charge therefor, as specified in Section 9 1 1~~

(g) **SECURITY DEPOSIT**--$3,033 33

(h) **NOTICE ADDRESS**--

**TENANT**
Town Center Deli, Inc
%Steven Ciancio
57 Maple Avenue
Hastings On Hudson, NY 10706

**LANDLORD**
Cortlandt Town Center Limited Partnership, by
CBL & Associates Management, Inc
6148 Lee Highway-Suite 300
Chattanooga, Tennessee 37421

**Section 1.2 Shopping Center, Leased Premises, and Term.** Landlord hereby leases to Tenant and Tenant rents from Landlord those certain premises ("Leased Premises") now existing or hereafter to be erected in the Shopping Center described in Section 1 1(a) and shown on **EXHIBIT A** hereto The Term [as described in Section 1 1(b)] shall commence on ~~the earlier of (1) the date which is~~ **April 1, 1999** ~~days following Landlord's tender of possession of the Leased Premises, or (2) the date on which Tenant opens for business in the Leased Premises~~ Providing such entry does not interfere with Landlord's general construction of the Shopping Center and/or Landlord's work to be done, if any, in preparing the Leased Premises for Tenant's occupancy, Tenant, its agents, employees, and contractors, shall have the right to enter the Leased Premises prior to the tender of possession for the purposes of taking measurements and obtaining other information required in connection with Tenant's prospective occupancy thereof Any access by Tenant to the Leased Premises prior to the commencement of the Term shall be upon all of the terms, covenants and conditions of this Lease except for the payment of rent and other charges Tenant shall pay all utility charges relating to the Leased Premises which accrue after Landlord's tender of possession

Tender of possession shall be deemed to have occurred when Landlord has completed Landlord's work, if any, required by **Exhibit B** annexed hereto and made a part hereof

The Leased Premises shall extend to the exterior faces of exterior walls or to the building line where there is no wall, or the center line of those walls separating said premises from other leased premises in the Shopping Center, together with the appurtenances specifically granted in this Lease, but reserving and excepting to Landlord or its designee the right to install, maintain, use, repair and replace pipes, ductwork, conduits, utility lines and wires through hung ceiling space, column space, and partitions, in or beneath the floor slab or above or below the Leased Premises or other parts of the Shopping Center, except that Landlord shall not unreasonably interfere with or interrupt the business operations of Tenant within the Leased Premises, and except where necessary as determined by Landlord's architect, no pipes, conduits, utility lines, or wires installed by Landlord shall be exposed in the sales area of the Leased Premises

Tenant agrees to complete Tenant's work and open the Leased Premises for business to the public not later than **April 1, 1999** ~~days after tender of possession~~ In the event Tenant fails to take possession and open for business to the public fully fixtured, stocked, and staffed by ~~within~~ **April 1, 1999** ~~days after tender of possession,~~ then and in such event Landlord shall have, in addition to all remedies in this Lease provided, the right to collect in addition to the Minimum Annual Rent and other sums payable under this Lease a further item of additional rent at a rate equal to twice the Minimum Annual Rent per day for each and every day that Tenant shall fail to be open for business, which further additional rent shall be deemed to be in lieu of any Percentage Rent that may have been earned during such period

**Section 1.3 Acceptance of Leased Premises.** As often as may be requested by Landlord, Tenant shall promptly and without cost to Landlord execute, acknowledge, and deliver to Landlord and/or Landlord's mortgagee a written acceptance or estoppel certificate with respect to the Leased Premises in form and substance acceptable to Landlord

**Section 1.4 Quiet Enjoyment.** Tenant, upon paying the rents herein reserved and performing and observing all of the other terms, covenants, and conditions of this Lease on Tenant's part to be performed and observed, shall peaceably and quietly have, hold, and enjoy the Leased Premises during the Term, subject, nevertheless, to the terms of this Lease and to any mortgages, ground or underlying leases, agreements, and encumbrances to which this Lease is subordinate

**Section 1.5 Parties to Have No Liability if Shopping Center Not Constructed.** ~~If construction of the Shopping Center is not commenced within three (3) years after the date on which this Lease shall be completely executed, or if construction of the Shopping Center is not completed within two (2) years from the date commenced, this Lease shall thereupon cease and terminate and the parties shall be released and discharged from any and all liability hereunder~~

## ARTICLE II
## RENT AND OTHER CHARGES

**Section 2.1 Minimum Annual Rent.** Upon commencement of the Term, Tenant shall pay to Landlord without previous demand therefor and without any setoff or deduction whatsoever, the Minimum Annual Rent provided in Section 1 1(c), payable in equal monthly installments, in advance, on the first day of each and every calendar month throughout the Term, except that the first installment of Minimum Annual Rent shall be paid upon the execution of this Lease and, if the Term commences on a date other than the first day of a month, Tenant shall pay Landlord on the first day of the Term, a pro-rata portion of such Minimum Annual Rent, calculated on a thirty (30) day calendar month

~~The Minimum Annual Rent, and all future incremental increases thereto, shall be increased at the commencement of the fourth (4th) and seventh (7th) years of the Term by an amount equal to the higher annual Percentage Rent due and payable by Tenant during any of the prior three (3) years of the Term, and the Percentage Rent base shall be adjusted accordingly~~

~~If, at any time during the Term of this Lease, the Shopping Center shall have more than NUMBER Department Stores, the Minimum Annual Rent then in effect, and all future incremental increases thereto, shall be increased by fifteen percent (15%), and the Percentage Rent base shall be adjusted accordingly, for each Department Store in excess of NUMBER, commencing upon the date each such additional Department Store opens for business. For purposes of this paragraph, "Department Store" shall mean a retail store occupying not less than SIZE thousand (SIZE) square feet of total floor space. Notwithstanding the foregoing, Tenant does not rely on, and Landlord does not make any express or implied representation, promise or condition that any specific type, quality or number of Department Stores shall occupy any space in the Shopping Center during all or any part of the term of the Lease or renewals or extensions thereof, if any.~~

**Section 2.2 Percentage Rent.** (a) Tenant shall pay to Landlord, in addition to the aforesaid Minimum Annual Rent, the Percentage Rent provided in Section 1 1(d)

(b) The term "Gross Sales" means the selling price of all merchandise sold or delivered in, at, on, or from any part of the Leased Premises (including, without limitation, sales by means of any mechanical or vending device) and the charges for all services of any sort sold or performed in, at, or from any part of the Leased Premises and shall include sales and charges for cash or credit, regardless of collections in the case of the latter, but shall exclude (1) returns and refunds in fact made by Tenant upon transactions included within Gross Sales, not exceeding the selling price of merchandise returned by the purchaser and accepted by Tenant, (2) exchange of merchandise between stores of Tenant where such exchanges are made solely for the convenient operation of Tenant's business and not for the purpose of consummating a sale which has been made at, in, on, or from the Leased Premises, (3) the amount of any city, county, state, or federal sales, luxury, or excise tax on such sales which is both added to the selling price (or absorbed therein) and paid to the taxing authority by Tenant (but not by any vendor of Tenant) A sale shall be deemed to be made in the Leased Premises if an order therefor is secured or received in the Leased Premises, whether or not such order is filled in the Leased Premises or elsewhere or if, pursuant to mail, telegraph, telephone, or other similar means, orders are received or filled at or from the Leased Premises All moneys or other things of value not herein specifically excluded from Gross Sales shall be deemed included therein Nothing herein contained shall be construed as a consent to occupancy by a concessionaire, or to the use of any mechanical or other vending device in violation of the provisions of this Lease

(c) Tenant shall prepare and keep at the Leased Premises for a period of not less than three (3) years, adequate books and records (conforming to generally accepted accounting practices, consistently applied) showing Gross Sales for each month throughout the Term Tenant agrees that all Gross Sales shall be registered at the time each sale is made in a manner reasonably satisfactory to Landlord and in accordance with good business practices

(d) On or before the tenth (10th) day of each month during the Term, Tenant shall furnish Landlord at the place then fixed for the payment of rent a statement of Gross Sales for the preceding calendar month On or before the thirtieth (30th) day following each calendar quarter, Tenant shall submit a statement to Landlord, satisfactory to Landlord in form and substance, certified as correct by a Certified Public Accountant or, at Landlord's election, Tenant's chief financial officer, showing the amount of Gross Sales for such quarterly period together with an itemization of all claimed deductions therefrom Tenant shall require its licensees, if any are permitted hereunder, to furnish similar statements In addition to such quarterly Gross Sales statements, Tenant and any licensees of Tenant shall furnish to Landlord annual Gross Sales statements for said preceding calendar year certified as aforesaid on or before the thirtieth (30th) day following each calendar year Landlord will hold such information in confidence, except that Landlord may reveal such reported sales to any mortgagee or prospective mortgagee, encumbrancer, or purchaser of the Shopping Center, or a prospective purchaser of Landlord's interest therein

(e) In the event that Gross Sales for any quarterly period (January-March, April-June, July-September, October-December) during the Term exceed one-fourth (1/4) of the Percentage Rent base set forth in Section 1 1(d) hereof, then Tenant shall pay Landlord, at the time the aforesaid quarterly statement of Gross Sales is submitted to Landlord, an interim Percentage Rent payment computed upon such adjusted Percentage Rent base Any such interim payment shall be accounted for when the annual Percentage Rent is paid as hereinafter provided On or before each first day of February of each year, Tenant shall pay to Landlord the Percentage Rent due for the preceding calendar year, credited by any interim Percentage Rent payment(s) made by Tenant to Landlord during such calendar year Acceptance of such Percentage Rent by Landlord shall not constitute a waiver of Landlord's right to additional Percentage Rent justified by the audit hereinafter described In the event that two (2) Percentage Rent bases are stated for any particular calendar year, the Percentage Rent base for such calendar year shall be determined as follows Multiply each Percentage Rent base by a fraction, the numerator of which shall be the number of days during such calendar year applicable to such Percentage Rent base, and the denominator of which shall be three hundred sixty-five (365) The sum of the products as hereinbefore determined shall be the Percentage rent base for such calendar year

(f) If less than a quarterly period has transpired to the end of the month preceding the applicable date for the payment of interim Percentage Rent, then the interim Percentage Rent payable by Tenant shall be calculated upon an adjusted Percentage Rent base arrived at by multiplying the Percentage Rent base set forth in Section 1 1(d) hereof by a fraction, the numerator of which shall be the number of days transpired to the end of the quarterly period in question and the denominator of which shall be three hundred sixty (360)

(g) If there is a partial calendar year at the commencement and/or end of the Term, then, subject to subsection (f) hereof, Percentage Rent payable by Tenant for any such partial calendar year shall be calculated upon an adjusted Percentage Rent base arrived at by multiplying the Percentage Rent base set forth in Section 1.1(d) hereof by a fraction, the numerator of which shall be the number of days transpired to the end of such partial calendar year and the denominator of which shall be three hundred sixty (360).

(h) Landlord or its duly authorized representatives may, during regular business hours, inspect the records of Gross Sales made by Tenant, provided such inspection is commenced within three (3) years after Landlord's receipt of a certified annual statement of Gross Sales hereinabove required and is limited to the period covered by such statement. Tenant and each licensee shall produce said records on request of Landlord. If Landlord's audit shall disclose a deficiency in Gross Sales for such period of less than two percent (2%), Tenant shall promptly pay to Landlord the amount of such Percentage Rent due on such deficiency, if any. If such audit by Landlord shall disclose a deficiency in Gross Sales of two percent (2%) or more, then Tenant shall promptly pay Landlord Percentage Rent due on such deficiency, if any, together with Interest (as hereinafter defined) and the cost of such audit. If Tenant fails to file a certified annual statement of Gross Sales as herein required, Tenant shall pay all Percentage Rent due, if any, together with Interest and the cost of such audit. In addition to the foregoing, if any two (2) out of three (3) consecutive annual Gross Sales statements furnished by Tenant understate the amount of Gross Sales by more than two percent (2%), after notice by Landlord to Tenant of such understatement, then in such event Landlord may, at its option, terminate this Lease.

**Section 2.3 Taxes.** Tenant shall pay promptly when due or make reimbursement to Landlord for all taxes imposed upon Tenant's rent, Lease, and business operation, including, without limitation, all sales taxes, value added taxes, documentary taxes, stamp taxes, and other taxes assessed upon the consideration to be received by Landlord for this Lease, upon all personal property of Tenant, and shall also pay to Landlord, as additional rent, Tenant's share of real estate taxes as specified in this Section 2.3. Tenant's share of real estate taxes shall be computed by multiplying the total amount of such taxes ~~(less amounts paid by the tenants or occupants of spaces designated BUILDINGS/DEPARTMENT STORE REFERENCE on EXHIBIT A hereto)~~ by a fraction, the numerator of which shall be the number of square feet in the Leased Premises, and the denominator of which shall be the ~~"Leased Floor Area", as hereinafter defined, in the Shopping Center, less the square footage of the aforesaid designated spaces. Leased Floor Area shall mean the greater of (a) the actual leased floor area in the Shopping Center as of July 1 in each year or (b) eighty percent (80%) of the~~ total leasable floor area in the Shopping Center. ~~As used in this Section, "actual leased floor area" shall mean leased space which is open, operating, and/or for which rent is payable. Notwithstanding the foregoing, if the Shopping Center opens subsequent to July 1, the actual leased floor area for such year of opening shall be determined as of December 31st of such year.~~ Tenant acknowledges and stipulates that Landlord has made no representation or agreement of any kind as to the total dollar amount of such taxes, actual or estimated, or Tenant's dollar share thereof.

The term "real estate taxes" shall mean all taxes and assessments (special or otherwise) levied or assessed directly or indirectly against the Shopping Center (land, buildings and/or improvements as the same may be enlarged or reduced from time to time), and other taxes arising out of the use and/or occupancy of the Leased Premises imposed by federal, state, or local governmental authority or any other taxing authority having jurisdiction over the Shopping Center, including expenses directly incurred by Landlord in contesting the validity of, in seeking a reduction in, or in seeking to prevent an increase in any such tax(es) or assessment(s), but shall exclude franchise, capital stock, income, estate or inheritance taxes personal in nature to Landlord.

Landlord shall estimate the taxes referred to in this Section 2.3, and Tenant shall pay one-twelfth (1/12) thereof monthly in advance, together with the payment of Minimum Annual Rent. After the end of each calendar year Landlord shall furnish Tenant a statement in reasonable detail of the actual real estate taxes, prepared in accordance with sound accounting practices by Landlord's accounting department, and there shall be an adjustment between Landlord and Tenant, with payment to or repayment by Landlord, as the case may require, to the end that Landlord shall receive the entire amount of Tenant's annual share for such period.

**Section 2.4 Common Areas and Operating Costs.** All common areas and other common facilities (hereinafter collectively called "common areas") made available by Landlord in or about the Shopping Center shall be subject to the exclusive control and management of Landlord, expressly reserving to Landlord, without limitation, the right to erect and install within the parking areas, kiosks, planters, pools, sculpture, free-standing buildings, additional stories to buildings, or otherwise. Common areas (as initially constructed or as the same may be enlarged or reduced at any time thereafter) shall mean all areas, space, facilities, equipment, signs, and special services from time to time made available by Landlord for the common and joint use and benefit of Landlord and its designees, the Tenant and other tenants and occupants of the Shopping Center, and their respective employees, agents, subtenants, concessionaires, licensees, customers, and invitees, which may include (but shall not be deemed a representation as to their availability), the sidewalks, parking areas, access roads, driveways, landscaped areas, truck serviceways, tunnels, loading docks, pedestrian malls (enclosed or open), courts, stairs, ramps, elevators, escalators, comfort and first aid stations, community hall or auditorium, and parcel pick-up stations. Landlord hereby expressly reserves the right from time to time, to construct, maintain, and operate lighting and other facilities, equipment, and signs on all of the common areas, to police the same, to change the area, level, location, and arrangement of the parking areas and other facilities forming a part of the common areas, to construct, operate, maintain, repair, and replace retention ponds and mitigation areas which serve the Shopping Center, to build multi-story parking

facilities, to restrict parking by tenants and other occupants of the Shopping Center and their employees, agents, subtenants, concessionaires, and licensees, to enforce parking charges (by operation of meters or otherwise), but in such event the net proceeds from such charges, (except for proceeds from multi-story parking facilities constructed after the initial construction of the Shopping Center), after deducting the cost of enforcing the same or charges thereon by governmental authority, shall be applied in reduction of the cost of maintaining the common areas, to close temporarily all or any portion of the common areas for the purpose of making repairs or changes thereto and to discourage non-customer parking, to establish, modify, and enforce reasonable rules and regulations with respect to the common areas and the use to be made thereof, and to grant individual tenants the right to conduct sales in the common areas Landlord shall operate, manage, equip, light, and maintain the common areas in such manner as Landlord may from time to time determine, and Landlord shall have the right and exclusive authority to employ and discharge all personnel, including independent contractors, with respect thereto Tenant is hereby given a non-exclusive license to use, during the Term, the common areas of the Shopping Center as they may now or at any time during the Term exist, provided, however, that if the size, location, or arrangement of such common areas or the type of facilities at any time forming a part thereof is changed or diminished, Landlord shall not be subject to any liability therefor, nor shall Tenant be entitled to any compensation or diminution or abatement of rent therefor, nor shall such change or diminution of such areas be deemed a constructive or actual eviction Landlord reserves the right to grant to third persons the non-exclusive right to cross over and use in common with Landlord and all tenants of the Shopping Center the common areas as designated from time to time by Landlord In order to establish that the Shopping Center and any portion thereof is and will continue to remain private property and to prevent a dedication thereof or the accrual of any rights to any person or the public therein, Landlord hereby reserves the unrestricted right to close all or any portion of the Shopping Center owned, leased, or controlled by Landlord to the general public for one (1) day in each calendar year, and, in connection therewith, to seal off all entrances to the Shopping Center, or any portion thereof Tenant hereby acknowledges, consents, and agrees that any and/or all services, facilities, and access by the public to the Leased Premises and/or to the Shopping Center may be suspended in whole or in part during such temporary times as any of the department stores in the Shopping Center are not open for business, on legal holidays, or such other days as may be declared by local, state, or federal authorities as days of observance, and/or during any periods of actual or threatened civil commotion, insurrection, or other circumstances beyond Landlord's control

Tenant hereby agrees to pay Landlord a share, computed as hereinafter provided, of the Operating Costs (as hereinafter defined) of maintaining the common areas and the Shopping Center "Operating Costs" shall mean the total cost and expense incurred in operating, maintaining, and repairing the common areas, including without limitation, surcharges levied upon or assessed against parking spaces or areas, payments toward mass transit or car pooling facilities or otherwise as required by federal, state, or local governmental authorities, costs and expenses in connection with maintaining federal, state, or local governmental ambient air and environmental standards, the cost of all materials, supplies, and services purchased or hired therefor, with respect to the common areas (and any public roads to the extent imposed upon Landlord by any restrictive covenants, property owners' association, or governmental authority), the cost and expense of landscaping, landscaping maintenance, gardening, and planting, cleaning, painting (including line painting), decorating, paving, lighting, sanitary control, removal of snow, trash, garbage, and other refuse, including costs related to trash compactors, non-structural roof repairs to the Shopping Center, fire protection, water and sewerage charges, the costs of all types of insurance coverages carried by Landlord covering the Shopping Center, including, without limitation, public liability, personal and bodily injury and property damage liability and automobile coverage, All Risk (except for those items specifically excluded) Coverage, and all broad form coverages, sign insurance, and any other insurance that may be carried by Landlord covering the Shopping Center all in the limits and with deductibles selected by Landlord, operation of loudspeakers and any other equipment supplying music to the common areas or any parts thereof, operation of public toilets, installing and renting of signs, installation, maintenance, operation, utility costs, repair, and replacement of all exterior signs advertising the Shopping Center and/or individual businesses operated in the Shopping Center, maintenance, repair, and replacement of utility systems serving the common areas, including water, sanitary sewer and storm water lines, and other utility lines, pipes, and conduits, maintenance, repair, and replacement of retention ponds and mitigation areas which serve the Shopping Center, depreciation of the Shopping Center roof and parking lot surfaces, depreciation of machinery and equipment owned and used in operation, maintenance, and repair of the common areas, or the rental charges for such machinery and equipment; the cost of personnel (including applicable payroll taxes, workmen's compensation insurance and disability insurance) to implement all of the foregoing, including security personnel for the common areas and the directing of traffic and parking of automobiles on the parking areas thereof, administrative costs attributable to the common areas and an overhead cost equal to fifteen percent (15%) of the total Operating Costs of maintaining the Shopping Center as such costs are defined in this paragraph (but there shall be excluded initial costs of equipment properly chargeable to capital account) Landlord may cause any or all of said services to be provided by an independent contractor or contractors

Tenant's share of such Operating Costs shall be computed by multiplying the total amount of such Operating Costs ~~(less amounts paid by the tenants or occupants of spaces designated as BUILDINGS/DEPARTMENT STORE REFERENCES on EXHIBIT A hereto)~~ by a fraction, the numerator of which shall be the total number of square feet in the Leased Premises, and the denominator of which shall be the **Total Leasable Floor Area** ~~Leased Floor Area~~, as defined in Section 2 3, in the Shopping Center, ~~less the square footage of the aforesaid designated spaces~~ Tenant acknowledges and stipulates that Landlord has made no representation or agreement of any kind as to the total dollar amount of such Operating Costs, actual or estimated, or Tenant's dollar share thereof

Landlord shall estimate the Operating Costs referred to in this Section 2 4, and Tenant shall pay one-twelfth (1/12) thereof monthly in advance, together with the payment of Minimum Annual Rent After the end of each calendar year Landlord shall furnish Tenant a statement of the actual Operating Costs, prepared in accordance with sound accounting principles by Landlord's accounting department, and there shall be an adjustment between Landlord and Tenant, with payment to or repayment by Landlord, as the case may require, to the end that Landlord shall receive the entire amount of Tenant's annual share for such period

**Section 2.5 Utilities Charges.** Tenant shall pay promptly, as and when the same become due and payable, all water rents, rates and charges, all sewer rents and all charges for electricity, gas, heat, steam, hot and/or chilled water, air conditioning, ventilating, lighting systems, and other utilities supplied the Leased Premises If any such utilities are not separately metered or assessed or are only partially separately metered or assessed and are used in common with other tenants in the Shopping Center, Tenant will pay to Landlord a proportionate share of such charges for utilities used in common based on square footage of floor space leased to each tenant using such common facilities, in addition to Tenant's payments of the separately metered charges

Landlord may install re-registering meters and collect any and all charges aforesaid from Tenant, making returns to the proper public utility company or governmental unit, provided that Tenant shall not be charged more than the rates it would be charged for the same services if furnished directly to the Leased Premises by such companies or governmental units At the option of Landlord, any utility or related service which Landlord may at any time elect to provide to the Leased Premises may be furnished by Landlord or any agent employed, or independent contractor selected by Landlord, and Tenant shall accept the same therefrom to the exclusion of all other suppliers, so long as the rates charged by the Landlord or by the supplier of such utility or related service are competitive

Notwithstanding anything else contained in this Lease to the contrary, Landlord shall have the right, at any time and from time to time, to cause one or more utilities (including, without limitation, any heating, ventilating, air conditioning, and/or lighting systems serving the Leased Premises and/or any other Shopping Center areas) to be furnished by means of an on-site or off-site energy system and/or to provide some other alternative energy system (whether so-called "total energy" or otherwise) in lieu of the direct furnishing of the same to Tenant and other occupants of the Shopping Center from the appropriate utility company, and Tenant agrees in any such case, to accept any such utility from such alternative source in lieu of the appropriate utility company directly and to pay Landlord and/or such alternative source or other designee as Landlord shall determine all costs and charges therefor provided that the same shall not result in any additional cost or expense of the energy to Tenant over and above that which it would pay if it purchased same directly from the appropriate utility company, and provided further that same is in compliance with all laws, regulations, ordinances and other governmental requirements Landlord shall have no liability to Tenant for disruption of any utility service, and in no event shall such disruption constitute constructive eviction or entitle Tenant to an abatement of rent or other charges

## ARTICLE III
## CONSTRUCTION OF LEASED PREMISES

The Leased Premises shall be constructed by Landlord and/or Tenant in accordance with the provisions of **Exhibit B** annexed hereto and made a part hereof

Tenant is responsible, at its sole cost and expense, for obtaining any and all required governmental approval of the plans and specifications, including but not limited to building permit fees and any other fees, taxes, costs, and expenses attributable to the Leased Premises and for assuring that the plans and specifications comply with all governmental rules, regulations, codes, and ordinances, including but not limited to, those required by the City of Cortlandt, Westchester County, New York, state and local health departments, and state and local fire marshals

## ARTICLE IV
## USE OF LEASED PREMISES

**Section 4.1 Use of Leased Premises.** Tenant agrees to use the Leased Premises only for the permitted use set forth in Section 1 1(e) and for no other purpose

Tenant covenants that the Leased Premises during the Term of this Lease shall be used only and exclusively for lawful and moral purposes, and no part of the Leased Premises or improvements thereon shall be used in any manner whatsoever for any purpose in violation of the laws, ordinances, regulations, or orders of the United States, or of the state, county, and/or city where the Leased Premises are located Tenant shall comply with all such laws, ordinances, regulations, or orders now in effect or hereafter enacted or passed during the Term of this Lease insofar as the Leased Premises and any signs of the Tenant are concerned, including, but not limited to zoning ordinances, building codes, and fire codes, and the Americans with Disabilities Act of 1990 (Public Law 101-336) as may be amended from time to time (the "ADA"), and shall make at Tenant's own cost and expense all additions and alterations to the Leased Premises ordered or required by such authorities, whether in order to meet the special needs of Tenant, or by reason of the occupancy of Tenant, or otherwise, provided, however, Tenant shall not be required to make structural alterations to the Leased Premises or the building in which the Leased Premises are located unless made necessary by reason of the nature of Tenant's business, work performed in the Leased Premises, or the manner of operation thereof

Tenant shall not make, store, use, treat, or dispose of any "hazardous substance," "contaminant," or "pollutant" (as those terms are defined under any federal, state, and local law or regulation, or common law, pertaining to health, safety, or environmental protection, as from time to time amended, referred to herein in the aggregate as "hazardous substance laws") on or about the Leased Premises, except, to the extent that Tenant's manufacturing, storage, use, treatment, or disposal is permitted by or excepted from such hazardous substance laws In cases of such permits or exceptions, Tenant shall provide Landlord,

a) current copies of all such permits and restrictions on such permits, and,

b) current documents required as a condition of such permits or exceptions as mandated by hazardous substance laws

These permits, documents, or exceptions shall be furnished to Landlord prior to execution and acceptance of the Lease Tenant shall also furnish Landlord a monthly certification that such permits, documents, or exceptions are still current, that Tenant shall immediately notify Landlord of any change, revocation, or enforcement action concerning such permits, documents, or exceptions

**Section 4.2 Joint Opening of Shopping Center.** ~~In order to effect a joint opening of the Shopping Center, Tenant, upon written request from Landlord, shall delay the opening of its store for a period not to exceed thirty (30) days from the date it would otherwise have opened the store for business, and in such event and notwithstanding Section 1 2 hereof, the Term shall commence on the date of the joint opening of the Shopping Center.~~

**Section 4.3 Continuous Operation by Tenant.** Tenant agrees that a shopping center is an interdependent enterprise, that the Shopping Center's success is dependent on the continued operation of Tenant's business, and that maintenance of the character and quality of the Shopping Center is enhanced by the continued occupancy of the Leased Premises and the regular conduct of Tenant's business therein Accordingly, Tenant agrees to open the Leased Premises for business on the commencement date provided in Section 1 2 hereof and operate one hundred percent (100%) of the Leased Premises during the entire Term under the name set forth in this Lease or such other name as Landlord may approve in writing, with due diligence and efficiency and so as to produce all of the Gross Sales which may be produced by such manner of operation Tenant shall carry at all times in the Leased Premises a stock of merchandise of such size, character, and quality as shall be reasonably designed to produce maximum Gross Sales Tenant shall conduct its business in the Leased Premises at least seven (7) days per week, Monday through Saturday continuously between the hours of 10 00 A M and 9 00 P M and Sundays continuously between the hours of 1 00 P M and 6 00 P M , or additional hours as any anchor store (or junior anchor store) in the Shopping Center is open for business, or at Landlord's election such other or additional hours as may be determined by Landlord If Tenant fails to perform its obligations under this Section, (a) Landlord shall be entitled to injunctive relief requiring Tenant to occupy the Leased Premises and operate as hereinabove provided, and/or (b) recognizing that the actual damages Landlord will incur by reason of Tenant's failure to comply with this Section are likely to be uncertain and not easily proven, Tenant and Landlord hereby agree that Landlord may elect to receive from Tenant as liquidated damages and not as a penalty, and Tenant hereby agrees to pay to Landlord promptly upon receipt of notice thereof, in addition to the Minimum Annual Rent and other sums due under this Lease, in each month or any part thereof during the remainder of the Term during which Tenant does not comply with this Section, additional sums equal to (i) twice the Minimum Annual Rent per month, and additionally (ii) one-sixth (1/6) of the highest annual Percentage Rent payable, if any, by Tenant at any time during the Term, the parties further agreeing that the amount of liquidated damages hereunder has been arrived at by Landlord and Tenant in good faith in an effort to establish agreed upon liquidated damages which Landlord will suffer in the event Tenant fails to comply with this Section, and/or (c) at Landlord's election after giving ten (10) days' written notice, Landlord shall be entitled to immediate possession of the Leased Premises for the purpose of commencing reletting efforts Landlord's rights and remedies under this Section are in addition to and are without prejudice to Landlord's rights and other remedies set forth in Section 11 2 hereof A vacation of premises or cessation of operations by any other tenant(s) in the Shopping Center shall not in any way release Tenant from Tenant's obligations under this Lease, such obligations being independent covenants of this Lease

**Section 4.4 Additional Covenants of Tenant.** Tenant's use of the Leased Premises and the common areas shall be subject at all times during the Term to reasonable rules and regulations adopted by Landlord not in conflict with any of the express provisions hereof governing the use of the parking areas, malls, walks, driveways, passageways, signs, exteriors of buildings, lighting, and other matters affecting other tenants in and the general management and appearance of the Shopping Center Tenant agrees to comply with all such rules and regulations upon notice to Tenant from Landlord In the event Tenant fails to comply with such rules and regulations or any of the other covenants set forth in this Section after twenty-four (24) hours' notice from Landlord of this non-compliance (which notice ~~may be oral or~~ shall be in writing), then Tenant shall pay to Landlord as additional rent the sum of one hundred dollars ($100 00) for each violation, acceptance of such additional rent to be without prejudice to any other rights or remedies available to Landlord Each day on which a violation occurs or continues shall be a separate violation Tenant expressly agrees as follows



(a) All deliveries to or from the Leased Premises shall be done only at such times, in the areas, and through the entrances designated for such purpose by Landlord

(b) All garbage and refuse shall be kept inside the Leased Premises in the kind of container specified by Landlord, and shall be placed outside of the Leased Premises prepared for collection in the manner and at the times and places specified by Landlord If Landlord shall provide or designate a service for picking up refuse and garbage, Tenant shall use same at Tenant's cost Tenant shall pay the cost of removal of any of Tenant's refuse and garbage, and maintain all common loading areas in a clean manner satisfactory to the Landlord If any part of the Tenant's business shall consist of the preparation and/or sale of food, including without limitation the operation of a restaurant, snack shop, or food market, Tenant shall provide refrigerated garbage containers at Tenant's expense for the disposal of its food scraps and refuse Tenant shall use any trash compactor Landlord provides for the general use of Tenant or tenants in a designated area of the Shopping Center Notwithstanding the foregoing provisions, in the event Tenant is or becomes a generator of medical waste, Tenant shall be solely responsible for complying with all federal, state and local laws whether existing now or established in the future, relating in any way to the storage, containment, treatment, transfer, transportation and disposal of medical waste (including the use of licensed medical waste management companies) and shall indemnify and hold Landlord harmless for Tenant's noncompliance or violations thereof For purposes hereof, "medical waste" shall mean any solid, semisolid or liquid waste which is generated in the diagnosis, treatment (e g , provisions of medical services), immunization or performance of a service to the body of human beings or animals, in research pertaining thereto or in the production or testing of biologicals "Generator" shall mean any person or entity whose act or process produces medical waste as hereinbefore defined

(c) No radio or television aerial or other device shall be erected on the roof or exterior walls of the Leased Premises or the building in which the Leased Premises are located without first obtaining in each instance Landlord's consent in writing Any aerial or device installed without such written consent shall be subject to removal at Tenant's expense without notice at any time

(d) ~~No loud speakers, televisions, photograph, radios, tape players, or other devices shall be used in a manner so as to be heard or seen outside of the Leased Premises without the prior written consent of Landlord, nor shall Tenant solicit business or distribute advertising or promotional material in the common areas~~ No electronic or communication devices shall be used in the Leased Premises or in connection therewith which interrupt or interfere with the use and enjoyment of electronic or communication devices of other occupants of the Shopping Center or of the neighborhood in which the Shopping Center is located

(e) The plumbing facilities shall not be used for any other purpose than that for which they are constructed, no foreign substance of any kind shall be thrown therein, and the expense of any breakage, stoppage, or damage resulting from a violation of this provision shall be borne by Tenant All grease traps, if any, shall be installed and maintained in accordance with applicable law and in accordance with Landlord's requirements

(f) Tenant at its expense shall contract for termite and pest extermination services covering the Leased Premises, to be rendered as needed but at least annually

(g) Tenant shall not burn any trash or garbage of any kind in the Leased Premises, the Shopping Center, or within three (3) miles of Shopping Center

(h) Tenant shall keep any display windows or signs in or on the Leased Premises well lighted during such hours and days that any enclosed mall in the Shopping Center is lighted by Landlord

(i) Tenant shall keep and maintain the Leased Premises (including, without limitation, exterior and interior portions of all windows, doors and all other glass) in a neat and clean condition

(j) Tenant at its expense shall participate in any reasonable window cleaning program that may be established by Landlord for all or substantially all other stores in the Shopping Center

(k) Tenant shall take no action which would violate Landlord's labor contracts, if any, affecting the Shopping Center, nor create any work stoppage, picketing, labor disruption or dispute, or any interference with the business of Landlord or any other tenant or occupant in the Shopping Center or with the rights and privileges of any customer or other person(s) lawfully in and upon said Shopping Center, nor shall Tenant cause any impairment or reduction of the good will of the Shopping Center Tenant, General Contractor and sub-contractor shall execute a labor disharmony letter setting forth the aforesaid covenants prior to commencement of construction in the Leased Premises

(l) Tenant shall pay before delinquency all license or permit fees and charges of a similar nature for the conduct of any business in the Leased Premises

(m) Tenant shall use the Shopping Center name and logo, as such may be changed from time to time, in referring to the location of the Leased Premises in all newspaper, radio, television, or other advertising

(n) Tenant shall store and/or stock in the Leased Premises only such merchandise as Tenant is permitted to offer for sale in the Leased Premises pursuant to this Lease Tenant shall not violate applicable federal or state laws prohibiting the sale or display of products which infringe on the trademarks or copyrights of others

(o) Tenant shall not conduct or permit any fire, bankruptcy, auction, or "going out of business" sale (whether real or fictitious) in the Leased Premises, or utilize any unethical method of business operation

(p) Tenant shall not perform any act or carry on any practice which may damage, mar, or deface the Leased Premises or any other part of the Shopping Center

(q) Tenant shall not use any forklift truck, tow truck, or any other powered machine for handling freight in the Shopping Center except in such manner and in those areas in the Shopping Center as may be approved by Landlord in writing All such equipment shall have rubber wheels only

(r) Tenant shall not place a load on any floor in the interior delivery system, if any, or in the Leased Premises, or in any area of the Shopping Center, exceeding the floor load which such floor was designed to carry, nor shall Tenant install, operate, or maintain therein any heavy item or equipment except in such manner as to achieve a proper distribution of weight

(s) Tenant shall not install, operate, or maintain in the Leased Premises or in any other area of the Shopping Center any electrical equipment which does not bear Underwriter's Laboratory approval, or which would overload the electrical system or any part thereof beyond its capacity for proper and safe operation as determined by Landlord

(t) Tenant shall not suffer, allow, or permit any vibration, noise, light, noxious odor, or other effect to emanate from the Leased Premises, or from any machine or other installation therein, or otherwise suffer, allow, or permit the same to constitute a nuisance or otherwise interfere with the safety, comfort, and convenience of Landlord or any of the other occupants of the Shopping Center or their customers, agents, invitees, or any others lawfully in or upon the Shopping Center Upon notice by Landlord to Tenant that any of the aforesaid is occurring, Tenant agrees to forthwith remove or control the same

(u) Tenant shall not use or occupy the Leased Premises in any manner or for any purpose which would injure the reputation or impair the present or future value of the Leased Premises, the Shopping Center, and/or the neighborhood in which the Shopping Center is located

(v) Tenant shall not store, display, sell, or distribute any alcoholic beverages or any dangerous materials (including without limitation fireworks) unless specifically permitted in this Lease

(w) Tenant shall not use or occupy the Leased Premises or do or permit anything to be done therein in any manner which shall prevent Landlord and/or Tenant from obtaining at standard rates any insurance required or desired, or which would invalidate or increase the cost to Landlord of any existing insurance, or which might cause structural injury to any building, or which would constitute a public or private nuisance, or which would violate any present or future laws, regulations, ordinances, or requirements (ordinary or extraordinary, foreseen or unforeseen) of the federal, state, or municipal governments, or of any department, subdivisions, bureaus, or offices thereof, or of any other governmental public or quasi-public authorities now existing or hereafter created having jurisdiction over the Leased Premises or the Shopping Center of which they form a part

(x) Tenant shall not operate on the Leased Premises or in any part of the Shopping Center any coin or token operated vending machine or similar device (including, without limitation, pay telephones, pay lockers, pay toilets, scales, amusement devices, and machines for the sale of beverages, foods, candy, cigarettes, or other merchandise and/or commodities), except for the sole and exclusive use of Tenant's employees

**Section 4.5 Signs, Awnings and Canopies.** Landlord may erect and maintain such suitable signs as it in its sole discretion may deem appropriate in the Shopping Center Tenant may erect and maintain only such signs as Landlord may approve Tenant shall submit to Landlord detailed drawings of its sign for review and approval by Landlord prior to erecting said sign on the Leased Premises

Said Approval cannot be unreasonably withheld (GH)

Tenant shall keep insured and maintain such sign in good condition, repair, and operating order at all times If any damage is done to Tenant's sign, Tenant shall commence to repair same within five (5) days or Landlord may at its option repair same at Tenant's expense

Tenant shall not place or permit to be placed or maintained on any door, exterior wall, or window of the Leased Premises any sign, awning, canopy, advertising matter, or other thing of any kind, and shall not place or maintain any decoration, lettering, or advertising matter on the glass of any window or door of the Leased Premises without first obtaining Landlord's written consent Tenant further agrees to maintain any such signs, awnings, canopies, decorations, lettering, advertising matter, or other things as may be approved by Landlord in good condition, operating order, and repair at all times All signs of Tenant visible from the common areas of the Shopping Center shall be in good taste and shall conform to the standards of design, motif, and decor from time

to time established by Landlord for the Shopping Center No flashing signs shall be permitted No credit card signs or advertisements, nor any hand lettered signs shall be visible from the common areas Tenant shall install professionally lettered name signs on its service door

**Section 4.6 Retail Restriction Limit.** The parties acknowledge that the realization of the benefits of a percentage rent lease are dependent upon Tenant's maximizing its Gross Sales, and that self-competition is inconsistent with the generation of maximum Gross Sales The parties further acknowledge that the Minimum Annual Rent was negotiated together with and giving consideration to the Percentage Rent rate and Base and that self-competition by Tenant will deprive Landlord of a bargained-for consideration Further, the parties acknowledge that the Shopping Center is an interdependent and synergistic environment and that self-competition by Tenant is inconsistent with such environment ~~Accordingly, Tenant covenants and agrees that during the Term and any extension or renewals thereof Tenant will not, directly or indirectly, engage in any business similar to or in competition with that for which the Leased Premises are let, within a radius of three (3) miles of the Shopping Center, measured from the perimeter of the Shopping Center, without Landlord's prior written consent The covenant of the preceding sentence shall be inapplicable to any business of Tenant existing as of the date hereof, provided the nature, character, and/or size of such business remains the same and is continuously operated at the same location~~ If Tenant shall breach the covenant contained in this Section 4 6, then in addition to the rights and remedies provided in Article XI of this Lease, Landlord may, at its option, either (i) terminate this Lease upon thirty (30) days' written notice to Tenant, or (ii) enjoin the operation of the violative store of Tenant, or (iii) include all Gross Sales generated by any violative store of Tenant in calculating the Percentage Rent due under this Lease

## ARTICLE V
## INSURANCE REQUIRED OF TENANT

**Section 5 1 Insurance Required of Tenant.** (a) Tenant shall obtain and provide, on or before the earlier of the commencement of the Term or Tenant's entering the Leased Premises for any purpose, and keep in force at all times thereafter, the following insurance coverages with respect to the Leased Premises

(i) Commercial General Liability Insurance, with contractual liability endorsement, relating to the Leased Premises and its appurtenances on an occurrence basis with a minimum single limit of Two Million Dollars ($2,000,000 00) in the aggregate

(ii) All Risk (except for those items specifically excluded) Coverage, and Flood (if required by Landlord, any mortgagee or governmental authority) Insurance and such other risks as Landlord may reasonably elect to require in an amount adequate to cover the replacement cost of all personal property, decorations, trade fixtures, furnishings, equipment, and all contents therein

(iii) Boiler and Machinery (Mechanicals) Insurance covering all pressure vessels, boilers, heating, ventilating, and air conditioning equipment, or similar equipment, if any, in, on, adjoining, above, or beneath the Leased Premises which serve the Leased Premises, in a minimum amount of One Million Dollars ($1,000,000 00), provided, however, Tenant shall not be required to maintain separate coverage if the risks contemplated herein are adequately covered by Tenant's other insurance required pursuant to this Section

(iv) Business Interruption Insurance covering those risks referred to in (ii) above in an amount equal to all Minimum Annual Rent and other sums payable under this Lease for a period of twelve (12) months commencing with the date of loss

(v) As required by the law of the State where the Leased Premises are located, Worker's Compensation Insurance covering all persons employed, directly or indirectly, in connection with any finish work performed by Tenant or any repair or alteration authorized by this Lease or consented to by Landlord, and all employees and agents of Tenant with respect to whom death or bodily injury claims could be asserted against Landlord or Tenant

(vi) Plate Glass Insurance

(vii) Such other insurance as may be carried on the Leased Premises and Tenant's operation thereof, as may be determined by Landlord

(viii) Liquor Legal Liability Insurance (~~if obtainable~~) in such amounts as Landlord may from time to time require(but in no event initially less than ~~Five~~ Three Million Dollars (~~$5,000,000 00),~~ 3,000,000) subject to subsection (d) below, or, if Liquor Legal Liability Insurance is unavailable, such other liability insurance as may be obtainable in the area of the Leased Premises to cover Tenant's and/or Landlord's vicarious liability with respect to the actions of Tenant's patrons on or off the premises, which liability shall or may arise by reason of Tenant's sale to such patrons of alcoholic beverages, unless such risks are covered by Tenant's Commercial General Liability Insurance

(b) Before undertaking any alterations, additions, improvements, or construction, Tenant shall obtain at its expense a commercial general liability insurance policy insuring Tenant and Landlord against any liability which

may arise on account of such proposed alterations, additions, improvements, or construction on an occurrence basis with the minimum limits set forth in this Section 5 1

(c) All of the aforesaid insurance, except the Worker's Compensation Insurance required by subparagraph (a)(v) above, shall be written in the name of Tenant with Landlord (and any designee(s) of Landlord) named as Additional Insured and shall be written by one or more Best Rated A/VII or better insurance companies licensed in the state where the Shopping Center is located and in form satisfactory to Landlord, all such insurance may be carried under a blanket policy covering the Leased Premises and any other of Tenant's stores, all such insurance shall contain endorsements that such insurance may not be cancelled or amended with respect to Landlord (or its designees) except upon thirty (30) days' prior written notice to Landlord (and any such designees) by the insurance company, Tenant shall be solely responsible for payment of premiums and that Landlord (or its designees) shall not be required to pay any premium for such insurance, in the event of payment of any loss covered by such policy, Landlord (or its designees) shall be paid first as their interests may appear by the insurance company for Landlord's loss The minimum limits of the commercial general liability policy of insurance shall in no way limit or diminish Tenant's liability hereunder Tenant shall deliver to Landlord at least fifteen (15) days prior to the time such insurance is first required to be carried by Tenant, and thereafter at least fifteen (15) days prior to the expiration of such policy, either a stamped certified true duplicate original or a certificate of insurance on all policies procured by Tenant in compliance with its obligations hereunder, together with evidence satisfactory to Landlord of the payment of the premiums therefor If Tenant fails to obtain and provide any or all of the aforesaid insurance, then Landlord may, but shall not be required to, purchase such insurance on behalf of Tenant and add the cost of such insurance as additional rent payable with the next installment of Minimum Annual Rent

(d) The minimum limits of the commercial general liability policy of insurance shall be subject to increase at any time, and from time to time, after the commencement of the fifth (5th) full year of the Term if same shall become necessary for adequate protection Within thirty (30) days after demand therefor by Landlord, Tenant shall furnish Landlord with evidence of Tenant's compliance with such demand

(e) Tenant agrees to notify Landlord in writing not less than thirty (30) days prior to the date Tenant opens for business in the Leased Premises of the actual cost of all permanent leasehold improvements and betterments installed or to be installed by Tenant in the Leased Premises (whether same have been paid for entirely or partially by Tenant), but exclusive of Tenant's personal property, movable trade fixtures and contents, in order that Landlord can insure said improvements and betterments from and after the date Tenant opens for business in the Leased Premises on an All Risk (except for those items specifically excluded) basis, and such other risks as Landlord may elect to insure Similar notification shall be given to Landlord not less than thirty (30) days prior to the commencement of any proposed alterations, additions, or improvements to the Leased Premises by Tenant (if same are permitted under the terms of this Lease) subsequent to the initial construction of the Leased Premises If, on account of the failure of Tenant to comply with the foregoing provisions, Landlord is adjudged a co-insurer by its insurance carrier, then any loss or damage Landlord shall sustain by reason thereof shall be borne by Tenant and shall be immediately paid by Tenant upon receipt of a bill therefor together with evidence of such loss

**Section 5.2 Fire Insurance Rate and Requirements.** (a) Tenant agrees, at its own cost and expense, to comply with all of the rules and regulations of the Fire Insurance Rating Organization having jurisdiction and any similar body If, at any time and from time to time, as a result of or in connection with any failure by Tenant to comply with the foregoing sentence or any act of omission or commission by Tenant, its employees, agents, contractors, or licensees, or as a result of or in connection with the use to which the Leased Premises are put (notwithstanding that such use may be for the purposes hereinbefore permitted or that such use may have been consented to by Landlord), the hazard insurance rate(s) applicable to the Leased Premises, or the building in which same are located, or to any other premises in said building, or to any adjacent property owned or controlled by Landlord, or an affiliate of Landlord, and/or to the contents in any or all of the aforesaid properties (including rent insurance relating thereto) shall be higher than that which would be applicable for the least hazardous type of occupancy legally permitted therein, Tenant agrees that it will pay to Landlord, on demand, as additional rent, such portion of the premiums for all hazard insurance policies in force with respect to the aforesaid properties (including rent insurance relating thereto) and the contents of any occupant thereof as shall be attributable to such higher rate(s) If Tenant installs any electrical equipment that overloads the lines in the Leased Premises or the building in which the Leased Premises are located, Tenant shall, at its own cost and expense, promptly make whatever changes are necessary to remedy such condition and to comply with all requirements of the Landlord and the Fire Insurance Rating Organization and any similar body and any governmental authority having jurisdiction thereof For the purpose of this paragraph, any finding or schedule of the Fire Insurance Rating Organization having jurisdiction thereof shall be deemed to be conclusive

(b) In the event that this Lease so permits and Tenant engages in the preparation of food or packaged foods or engages in the use, sale, or storage of inflammable or combustible material, Tenant shall install chemical extinguishing devices (such as ansul) approved by the Fire Insurance Rating Organization and shall keep such devices under service as required by such organization

(c) If gas is used in the Leased Premises, Tenant shall install at its expense gas cut-off devices (manual and automatic)

**Section 5.3 Waiver of Subrogation.** Landlord shall not be liable for any damage by fire or other peril includable in the coverage afforded by an All Risk (except for those items specifically excluded) Insurance policy, (whether or not such coverage is in effect), no matter how caused, it being understood that the Tenant will look solely to its insurer for reimbursement Tenant shall not be liable for any damage by fire or other peril includable in the coverage afforded by an All Risk (except for those items specifically excluded) Insurance policy (whether or not such coverage is in effect), no matter how caused, it being understood that Landlord will look solely to its insurer for reimbursement Any waiver of either party's rights against the other contained in this Section shall be ineffective if such waiver shall be unobtainable, or result in an increase in the cost of either party's insurance, unless the other party shall pay such increase within ten (10) days after notice thereof

## ARTICLE VI
## REPAIRS AND MAINTENANCE

**Section 6.1 Repairs by Landlord.** Within a reasonable period after receipt of written notice from Tenant, Landlord shall make necessary structural repairs to the exterior walls (excluding the exterior of and the frames surrounding all windows, doors, plate glass, store fronts, and signs), necessary repairs to the roof, foundations, load bearing items, plumbing, pipes, and conduits located outside the Leased Premises and/or in the common areas, and necessary repairs to sidewalks, malls, parking areas, and curbs Landlord shall not be required to make any repairs where same were made necessary by any act or omission or negligence of Tenant, any subtenant, or concessionaire, or their respective employees, agents, invitees, licensees, visitors, or contractors, or by fire or other casualty or condemnation, except as provided in Article VIII

**Section 6.2 Repairs and Maintenance by Tenant.** Tenant shall make and pay for all repairs to the Leased Premises and all equipment and systems serving the Leased Premises exclusively and shall replace all things which are necessary to keep the same in a good state of repair and operating order, such as (but not limited to) all fixtures, furnishings, lighting, and store signs of Tenant Tenant shall also maintain, replace, and keep in good repair and operating order all components exclusively serving the Leased Premises, whether located within or without the Leased Premises, including but not limited to air conditioning, ventilating, plumbing, sprinklering, heating, and electrical installations, ceilings, inside walls, carpeting, and floor surfaces Tenant shall at all times keep the Leased Premises and all exterior entrances, exterior walls, glass and show mouldings, partitions, doors, floor surfaces, fixtures, equipment, and appurtenances thereof in good order, condition, and repair, and in a reasonably satisfactory condition of cleanliness, including reasonable periodic painting of the Leased Premises, and Tenant shall make such other necessary repairs in and to the Leased Premises not specified in Section 6 1 hereof as being the responsibility of Landlord, and as required by Section 5 3 hereof Tenant shall at its expense replace all broken or damaged glass or substitutes therefor, as the case may be The provisions of this Section 6 2 shall not limit Landlord's obligation to restore or repair under Article VIII hereof in the event of fire or other casualty

If (i) Tenant does not repair properly as required hereunder and to the reasonable satisfaction of Landlord, or (ii) Landlord, in the exercise of its sole discretion, determines that emergency repairs are necessary, or (iii) repairs or replacements to the Shopping Center and/or common areas or to the Leased Premises are made necessary by any act or omission or negligence of Tenant, its agents, employees, subtenants, assignees, concessionaires, contractors, invitees, licensees, or visitors, then in any of such events Landlord may make such repairs without liability to Tenant for any loss or damage that may accrue to Tenant's merchandise, fixtures, or other property, or to Tenant's business by reason thereof, and upon completion thereof, Tenant shall pay Landlord's costs for making such repairs plus twenty percent (20%) for overhead, upon presentation of a bill therefor, as additional rent Said bill shall include Interest from the date such repairs were billed by the contractor(s) making such repairs

**Section 6.3 Inspection.** Landlord or its representatives shall have the right to enter the Leased Premises during any business day (and in emergency at all times) during the Term

**Section 6.4 Obstructions.** Tenant agrees to keep its loading facilities, if any, and the sidewalks and mall areas immediately adjoining the Leased Premises free from Tenant's trash, litter, or obstructions, and, in addition, if the Leased Premises open onto an outside area, to keep said outside sidewalk area immediately adjoining the Leased Premises free from ice and snow

## ARTICLE VII
## ADDITIONS AND ALTERATIONS

**Section 7.1 By Landlord.** Landlord reserves the right from time to time to make changes, alterations, repairs, additions, and eliminations in and to the buildings and structures and the common areas in the Shopping Center, to build additional stories on the building in which Leased Premises are contained, to install seating, kiosks, and planting areas, temporary or permanent free-standing units and vending devices in such areas, including public areas, common areas, and malls, and as it deems feasible, to erect any new or additional buildings or kiosks in any part of the Shopping Center, to enclose any and all malls, make such changes in the roadways and parking facilities including multi-level, double-decked, elevated, or subterranean parking facilities as it deems feasible, and use the air rights over any building or structures, install a sprinkler system in the Shopping Center, which may or may not include the Leased Premises, and relocate the various buildings, parking areas, and other common areas, enlarge or reduce the Shopping Center at the sole option of Landlord by addition(s) to the Shopping Center of land and/or

buildings or by the diminution thereof, randomly extend all or some storefronts beyond their present positions, vary, alter, remodel, renovate, relocate, revise, eliminate, and/or modify the following the mall floor and/or ceilings, the entrance and exit door locations to the enclosed mall, mall skylights, the color scheme throughout the Shopping Center, canopies, and columns in the mall and common areas and on the exterior of the Shopping Center, the exterior and interior facade of the Shopping Center, the Shopping Center logo and name, exterior identification and roadways in the Shopping Center, as Landlord or its managing agent, architect, engineers, designers, or planners may deem feasible, reasonable, and/or desirable, which in Landlord's sole, uncontrolled, and exclusive discretion it may deem necessary and/or desirable to all of which and to any resulting inconvenience Tenant hereby consents, and none of which shall entitle Tenant to any abatement of rent or constitute an eviction

In the event Landlord renovates, remodels, and/or encloses courts and malls, Tenant agrees at Tenant's expense to refurbish and/or remodel the storefront and the interior finishes of the Leased Premises so as to provide a mall storefront and an interior decor and fixture package that shall conform to the improvements made by Landlord (such new storefront and interior finishes to be subject to Landlord's approval) All of Tenant's refurbishing and/or remodeling to be accomplished pursuant to this paragraph shall be performed in a timely manner so as to be completed prior to or simultaneous with the grand opening of Landlord's improvements to the Shopping Center All such refurbishing and/or remodeling shall be done in accordance with plans to be provided by Tenant, subject to Landlord's prior written approval

Tenant shall, at its expense, at any time during the period commencing with the sixth (6th) year of the Term but not within two (2) years of the expiration of the Term, unless Tenant exercises an extension option, refurbish and/or remodel the storefront and the interior finishes of the Leased Premises so as to provide a mall storefront and an interior decor and fixture package that shall be in general accordance with (i) Tenant's then-current prototype store design (if such a new prototype design has been developed), or (ii) at Landlord's election, an updated design/decor package consistent with then-existing architectural and design trends and characteristics established by Landlord for mall storefronts in the Shopping Center All such refurbishing and/or remodeling shall be done in accordance with plans to be provided by Tenant, subject to Landlord's prior written approval

**Section 7.2 By Tenant.** Tenant may from time to time (if Tenant shall not then be in default), at its own expense, alter, renovate, or improve the Leased Premises provided the same be performed in a good and workmanlike manner, in accordance with accepted building practices and applicable laws including, but not limited to, building codes and zoning ordinances, and so as not to weaken or impair the strength or lessen the value of the building in which the Leased Premises are located Tenant shall be entitled to all salvage resulting therefrom No changes, alterations, or improvements affecting the exterior of the Leased Premises or the structure of the building shall be made by Tenant Prior to commencement of all such work, Tenant shall obtain Landlord's prior written approval of the plans and specifications therefor and shall cause Landlord's requirements for bonding, insurance, and other contractor requirements to be satisfied. Any work done by Tenant under the provisions of this Section 7 2 shall not interfere with the use by the other tenants of their premises in the Shopping Center

(24) Such approval shall not be unreasonably withheld

## ARTICLE VIII
## DAMAGE, DESTRUCTION OR CONDEMNATION OF THE LEASED PREMISES

**Section 8.1 Damage or Destruction.** (a) If all or any part of the Leased Premises shall be damaged or destroyed by fire or other hazard insured under an All Risk (except for those items specifically excluded) Insurance policy applicable to the Leased Premises, Landlord shall, except as otherwise provided herein, repair and/or rebuild the same with reasonable diligence, but Landlord's obligation hereunder shall be limited to the performance of Landlord's work, if any, in accordance with **Exhibit B** hereof, and Landlord shall not be obligated to commence such repairs and/or rebuilding until insurance proceeds are released to Landlord Landlord's obligation hereunder shall be limited to the proceeds received and retained by Landlord under its insurance policy which are allocable to the Leased Premises Should Tenant have notified Landlord in writing of the permanent leasehold improvements and betterments installed by Tenant in the completed Leased Premises (whether same have been paid for entirely or partially by Tenant) and should such notice accurately state the full insurable value of such permanent leasehold improvements and betterments, then and in those events, and subject to the first and second sentences of this subsection, Landlord shall repair and/or rebuild the Leased Premises to a condition comparable to that existing prior to such damage or destruction Nothing hereinabove contained shall impose upon Landlord any liability or responsibility to repair, rebuild, or replace any property belonging to Tenant If there should be a substantial interference with the operation of Tenant's business in the Leased Premises as a result of such damage or destruction which requires Tenant to temporarily close its business to the public, provided Tenant did not cause such damage or destruction the Minimum Annual Rent and other sums payable hereunder shall abate, but only to the extent of the proceeds actually received by Landlord on account of Landlord (or its designee(s)) under any policy of rent and/or business interruption insurance The Percentage Rent base (Gross Sales figure) shall be proportionately reduced based on the period of time Tenant's business is closed

Unless this Lease is terminated as hereinafter provided, Tenant shall repair, redecorate, and refixture the Leased Premises and restock the contents thereof in a manner and to at least a condition equal to that existing prior to its destruction or casualty, and the proceeds of all insurance carried by Tenant on its personal property, decorations, trade fixtures, furnishings, equipment, and contents in the Leased Premises shall be held in trust by

Tenant for such purposes Tenant agrees to exercise reasonable diligence to reopen for business in the Leased Premises as soon as practicable unless this Lease is terminated as hereinafter provided

(b) Notwithstanding anything else to the contrary contained in this Section 8 1 or elsewhere in this Lease, Landlord, at its option, may terminate this Lease on thirty (30) days' notice to Tenant given within one hundred eighty (180) days after the occurrence of any of the following

(i) The Leased Premises and/or building in which the Leased Premises are located shall be damaged or destroyed as a result of an occurrence which is not covered by Landlord's insurance, or

(ii) The Leased Premises and/or building in which the Leased Premises are located shall be damaged or destroyed and the cost to repair the same shall amount to more than twenty-five percent (25%) of the cost of replacement thereof, or

(iii) The Leased Premises shall be damaged to the extent of twenty-five percent (25%) or more of the cost of replacement or destroyed during the last three (3) years of the Term or any extended term, or

(iv) Any or all of the buildings or common areas of the Shopping Center are damaged (whether or not the Leased Premises are damaged) to such an extent that, in the sole judgment of Landlord, the Shopping Center cannot be operated as an economically viable unit

(c) Except to the extent specifically provided for in this Lease, none of the Minimum Annual Rent and other sums payable by Tenant, nor any of Tenant's other obligations under any provisions of this Lease, shall be affected by any damage to or destruction of the Leased Premises by any cause whatsoever

(d) The term "cost of replacement" as used in this section shall be determined by the company or companies selected by Landlord insuring Landlord against the casualty in question, or if there shall be no insurance, then as the parties hereto shall agree, or in absence of any insurance company determination or an agreement, as shall be determined by arbitration according to the rules and practices of the American Arbitration Association in ~~Chattanooga, Tennessee~~
the State of New York (W) D

(e) Tenant shall give to Landlord and to all mortgagees of record prompt written notice of any damage to or destruction of any portion of the Leased Premises resulting from fire or other hazard

**Section 8.2 Condemnation.** If the entire Leased Premises shall be appropriated or taken under the power of eminent domain by any public or quasi-public authority, or conveyance shall be made in lieu thereof, this Lease shall terminate and expire as of the date of such taking, and the parties shall thereupon be released from all liability hereunder which accrues after the date of such taking

Anything in this Lease to the contrary notwithstanding, in the event more than fifteen percent (15%) of the Leased Premises or more than twenty-five percent (25%) of the then existing paved parking spaces of the Shopping Center shall be appropriated or taken, or conveyance made in lieu thereof, either party shall have the right to cancel and terminate this Lease as of the date of such taking upon giving notice to the other of such election within thirty (30) days after such taking In the event of such cancellation, the parties shall thereupon be released from any further liability under this Lease (except for obligations existing on the effective date of such termination), provided, however, that if more than twenty-five percent (25%) of the then existing paved parking spaces shall be appropriated or taken and fifteen percent (15%) or less of the Leased Premises shall be appropriated or taken, and Tenant shall have given notice to Landlord of cancellation, Landlord may at its option nullify and vacate Tenant's cancellation by giving Tenant notice within thirty (30) days prior to the effective date of taking that it will provide substitute parking on or adjacent to the Shopping Center sufficient to cause the paved parking spaces after such substitution to be reduced by not more than twenty-five percent (25%) of the number of spaces prior to such taking, in which event the Lease shall remain in full force and effect

If a portion of the Leased Premises is taken, or conveyance made in lieu thereof, and if this Lease shall not be terminated as provided in the preceding paragraph, then the Minimum Annual Rent and the Percentage Rent base (Gross Sales figure) shall be ratably apportioned according to the space so taken, and Landlord shall, at its own expense, restore the remaining portion of the Leased Premises to a complete architectural unit, but such work shall not exceed the scope of the work required to be done by Landlord, if any, pursuant to **Exhibit B** hereto The cost of Landlord's obligation hereunder shall be limited to that portion of the net proceeds of the condemnation award actually received and retained by Landlord which are allocable to the Leased Premises

If more than fifteen percent (15%) of the leasable floor space within the Shopping Center shall be so taken, regardless of whether or not the Leased Premises shall have been partially taken, then Landlord shall have the right to terminate this Lease on thirty (30) days' written notice

All compensation awarded or paid upon such a total or partial taking of the Leased Premises shall belong to and be the property of Landlord without any participation by Tenant

It is mutually agreed that (i) any reduction in the parking area, number of parking spaces in the Shopping Center, and/or restriction on the number of motor vehicles that may enter the Shopping Center by action or order of any governmental authority, quasi-governmental authority, and/or by any court having jurisdiction which does not in fact constitute a physical taking of property shall not constitute such a taking or condemnation under this Lease that would entitle Tenant to terminate the Lease, (ii) any such environmental condemnation and/or compliance by Landlord with any order, rule or regulation of any such authority, with any such judicial decree, and/or any such existing or future law shall not constitute a default under this Lease by Landlord so as to entitle Tenant to terminate the Lease and the Lease shall remain in full force and effect, and (iii) as between Landlord and Tenant, Landlord may but shall not be obligated to comply with any such order, rule, regulation, judicial decree or law, it being understood by the parties that Landlord may elect to refuse to comply in order to test such order, rule, regulation, judicial decree, or law

## ARTICLE IX
## MARKETING FUND/MERCHANTS' ASSOCIATION, MEDIA FUND, GENERAL PROMOTION FUND

**Section 9.1 Amounts.**

**Section 9.1.1 Initial Amounts.** ~~Tenant covenants and agrees to pay the amounts set forth in Section 1 1(f) of this Lease for Marketing Fund/Merchant's Association, Media Fund, and General Promotion Fund Such amounts shall be paid as follows~~

(a) ~~Marketing Fund/Merchants' Association The Shopping Center will utilize either a Marketing Fund or a Merchants' Association Landlord will advise Tenant which one is being utilized in the Shopping Center and Tenant will pay the appropriate cost of either (i) or (ii) below The failure of any other tenant in the Shopping Center to contribute to the appropriate of the Marketing Fund or Merchants' Association shall not in any way release Tenant from Tenant's obligations hereunder, such obligations being a separate and independent covenant of this Lease~~

(i) ~~If the Shopping Center utilizes a Marketing Fund in lieu of a Merchants' Association, Tenant shall pay to Landlord, as additional rent, in advance on the first day of each calendar month of the Term, the amount set forth in Section 1 1(f) of this Lease for the Marketing Fund, subject to annual adjustments as set forth below~~

(ii) ~~If the Shopping Center utilizes a Merchants' Association in lieu of a Marketing Fund, Tenant shall pay to the Merchants' Association, as minimum dues, in advance on the first day of each calendar month of the Term, the amount set forth in Section 1 1(f) of this Lease for the Merchants' Association, subject to annual adjustments as set forth below~~

(b) ~~Media Fund Tenant shall pay to Landlord, as additional rent, in advance on the first day of each calendar month of the Term, the amount set forth in Section 1 1(f) of this Lease for the Media Fund, subject to annual adjustments as set forth below~~

(c) ~~General Promotion Fund~~

(i) ~~Initial Charge Tenant shall pay to Landlord a charge in the amount set forth in Section 1 1(f) of this Lease for the General Promotion Fund within ten (10) days after Tenant's receipt of Landlord's bill therefor~~

(ii) ~~Expansion/ Refurbishing Charge Subsequent payments by Tenant for the General Promotion Fund are contingent upon the events set forth in subsection 9 5(c) below Such subsequent payments shall be in an amount equal to Tenant's annual Marketing Fund/Merchants' Association charge for the year such subsequent payment becomes due Tenant shall pay to Landlord such subsequent payment within ten (10) days after Tenant's receipt of Landlord's bill therefor This charge will be payable for each Expansion/ Refurbishing of the Shopping Center during the Term of this Lease~~

**Section 9.1.2 Increases to Initial Amounts.** ~~The amounts due pursuant to Section 9 1 1 (a) and (b) above are subject to annual adjustment each year of the Lease Term as set forth below Such increases shall be effective on each anniversary of the commencement date of the Lease Term Tenant shall pay such amounts in the manner and at the time as set forth in subsections 9.1.1(a) and (b) above~~

(a) ~~Marketing Fund/Merchants' Association Tenant's annual increase for the appropriate of the Marketing Fund or Merchants' Association shall be the greater of two hundred dollars ($200 00) or ten percent (10%) per year~~

(b) ~~Media Fund Tenant's annual increase for the Media Fund shall be the greater of two hundred dollars ($200 00) or ten percent (10%) per year~~

Section 9.1.3 Landlord's Contribution to the Marketing Fund/Merchants' Association. ~~Landlord will make a contribution to the appropriate of the Marketing Fund or the Merchants' Association in the manner and amount set forth below. Landlord's obligations under this section shall not bind Landlord's mortgagee(s) or any purchaser at a foreclosure sale.~~

(a) ~~Marketing Fund. If the Shopping Center utilizes a Marketing Fund in lieu of a Merchants' Association, Landlord shall make an annual contribution to the Marketing Fund in an amount equal to twenty-five percent (25%) of the aggregate annual contributions actually paid by the tenants and other occupants of the Shopping Center. Landlord may elect, at its option, to contribute all or part of the services of the Shopping Center Marketing Director and related administrative personnel in lieu of all or part of Landlord's aforesaid cash contribution.~~

(b) ~~Merchants' Association. If the Shopping Center utilizes a Merchants' Association in lieu of a Marketing Fund, Landlord shall make an annual contribution to the Merchants' Association in an amount equal to twenty-five percent (25%) of the aggregate annual contributions actually paid by all other members thereof. Landlord may elect, at its option, to contribute all or part of the services of the Marketing Director of such Merchants' Association in lieu of all or part of Landlord's aforesaid cash contribution. Notwithstanding the foregoing, Landlord shall not be obligated to make its contribution for any calendar year until the Merchants' Association shall have delivered to Landlord satisfactory evidence of the amount of contributions it has received and a copy of its operating budget and such other financial data as Landlord may request.~~

Section 9.1.4 Transfer of Landlord's Obligations. ~~Landlord and Tenant hereby agree that Landlord, at its sole discretion, may elect to transfer and assign all of Landlord's rights, duties, obligations, and privileges, including the right to receive from Tenant the amounts due hereunder, to Landlord's designee which may include, without limitation, the particular Funds specified in this Article IX, Landlord's managing agent, and/or a qualified independent contractor.~~

Section 9.2 Marketing Fund. ~~If the Shopping Center utilizes a Marketing Fund in lieu of a Merchants' Association, the Marketing Fund will be established for the purpose of ongoing promotion of the Shopping Center.~~

(a) ~~The Marketing Fund amounts collected from Tenant pursuant to Section 9.1 of this Lease together with such amounts collected from other tenants of the Shopping Center and Landlord's cash contribution, pursuant to Section 9.1.3, will be deposited into the Marketing Fund.~~

(b) ~~The Marketing Fund will be used by Landlord to pay all costs and expenses for the promotion of the Shopping Center, which may include, without limitation, special events, shows, displays, signs, seasonal events, seasonal decor, promotional literature, and other activities designed to attract customers to the Shopping Center.~~

~~The Marketing Fund may also be used to pay the costs and expenses of administration of the Marketing Fund including, without limitation, the salary of the Marketing Director and related administrative personnel, rent, and insurance. Landlord shall have the right to employ or cause to be employed all promotional services and personnel which, in Landlord's judgment, are necessary to administer the Marketing Fund and operate such promotional activities. Such personnel shall be under the exclusive control and supervision of Landlord who shall have the sole authority to employ and discharge such personnel.~~

(c) ~~Landlord may appoint an advisory committee comprised of representatives of Landlord, a representative of each of the department stores, and representatives of the non-department store tenants in the Shopping Center to discuss the advertising and promotional activities sponsored by the Shopping Center utilizing the Marketing Fund.~~

Section 9.3 Merchants' Association. ~~If the Shopping Center utilizes a Merchants' Association in lieu of a Marketing Fund, Tenant will become and remain a member in good standing of such Merchants' Association organized in the Shopping Center which Landlord recognizes as the Merchants' Association for the Shopping Center.~~

~~Landlord shall have the right to employ, discharge, replace, and establish from time to time the compensation of the Marketing Director of the Merchants' Association.~~

Section 9.4 Media Fund. ~~The Media Fund will be established for the purpose of paying for an advertising program for the Shopping Center in cooperation with the applicable of the Marketing Fund or the Merchants' Association.~~

(a) ~~The Media Fund amounts collected from Tenant pursuant to Section 9.1 of this Lease together with such amounts collected from other tenants of the Shopping Center will be deposited into the Media Fund.~~





(b) ~~The quality and scope of the advertising campaigns paid for by the Media Fund will be determined by Landlord with the assistance of the applicable of the Marketing Director of the Marketing Fund or the Marketing Director of the Merchants' Association. Such campaigns may include but not be limited to, newspaper, electronic, billboards, direct mail, tabloids, and various other types of media.~~

(c) ~~In connection with such advertising, Landlord will from time to time request from Tenant information regarding merchandise and/or promotional details so that Landlord can produce such advertising for the Shopping Center. Landlord's request will specify the format to be used and the merchandise and/or services to be featured in such advertising. Tenant will submit such requested promotional information for promotional purposes to Landlord's representative who is requesting the information within thirty (30) days after receipt of Landlord's request therefor.~~

(i) ~~Landlord and its representatives shall not be responsible for the contents of any advertising information supplied by Tenant. Tenant shall indemnify and hold Landlord and its representatives harmless against any and all claims, demands, or actions arising out of the use of such advertising supplied by Tenant.~~

(ii) ~~If Tenant fails to furnish the information and/or merchandise as set forth herein, then in that event, Landlord is hereby authorized, but not obligated, to include Tenant's trade name and logo, if available, in such advertising.~~

**Section 9.5 General Promotion Fund.** ~~The General Promotion Fund shall be used for the additional promotion of the Shopping Center and its tenants.~~

(a) ~~Initial Opening of the Shopping Center. If the Shopping Center will have an initial grand opening celebration (the "Initial Opening") at the time or within ninety (90) days before Tenant opens or is required to open for business in the Leased Premises,~~

(i) ~~Tenant's charge for the General Promotion Fund will be used for promotion, advertising, and other activities and purposes in connection with the Initial Opening.~~

(ii) ~~Tenant shall advertise its business in the Leased Premises at Tenant's expense in such media as the applicable of the Marketing Director or the Marketing Director of the Merchants' Association determines in conjunction with the Initial Opening.~~

(b) ~~For Lease Term Commencing More than Ninety (90) Days after the Initial Opening of the Shopping Center. If Tenant's Lease Term shall commence more than ninety (90) days after the Initial Opening of the Shopping Center, Tenant's contribution to the General Promotion Fund will be used in the ongoing promotion of the Shopping Center including promotion connected with Tenant's grand opening of the Leased Premises.~~

(c) ~~Expansion/ Refurbishing of the Shopping Center. If at any time during the Term of this Lease Landlord causes an expansion of the Shopping Center which increases the area of the Shopping Center by ten percent (10%) or more or causes a major refurbishing of all or part of the Shopping Center (the "Expansion/ Refurbishing"), then thirty (30) days prior to the completion of the Expansion/ Refurbishing, Tenant shall pay to Landlord the Expansion/ Refurbishing Charge set forth in Section 9.1.1(c)(ii) above. Monies collected therefor will be used for the promotion of the celebration of the Expansion/ Refurbishing (the "Celebration"), which promotion will include, but not be limited to, special events, shows, displays, promotional literature, and other events and/or items furthering the Celebration.~~

## ARTICLE X
## FINANCING

**Section 10.1 Financing.** If any lending institution and/or any bonding authority with which Landlord or any such bonding authority has negotiated or may negotiate interim or long term financing for the Shopping Center or part thereof does not approve the credit rating of Tenant, or if such lending institution or bonding authority shall require change(s) in this Lease as a condition of its approval of this Lease for such financing, and if within fifteen (15) days after notice from Landlord (i) Tenant fails or refuses to supply or execute guarantees which are stated by Landlord as necessary to secure the approval of Tenant's credit by any such lending institution or bonding authority, or (ii) if Tenant fails or refuses to execute with Landlord the amendment or amendments to this Lease accomplishing the change(s) which are stated by Landlord to be needed in connection with approval of this Lease for purposes of such financing, or ~~(iii)~~ if for any reason, such financing in an amount satisfactory to Landlord cannot be obtained, Landlord shall have the right to cancel this Lease at any time prior to the commencement of the Term. In the event of cancellation by Landlord hereunder, this Lease shall be and become null and void and both parties shall automatically be released as of the date of Landlord's cancellation notice from any and all liability or obligation under this Lease, except that Landlord shall return the security, if any, made by Tenant. Notwithstanding anything contained herein to the contrary, Tenant shall not be required to agree, and Landlord shall not have any right of cancellation for Tenant's refusal to agree, to any modification of the provisions of this Lease relating to the amount

of Minimum Annual Rent and Percentage Rent reserved, the size and/or location of the Leased Premises, the duration and/or commencement date of the Term, or reducing the improvements to be made by Landlord to the Leased Premises prior to the tender of possession

**Section 10.2 Subordination.** Landlord and Tenant agree that this Lease is and shall be subject and subordinate at all times to all ground and underlying leases and to all mortgages (in any amounts and all advances thereon which may now or hereafter affect such leases or the real property of which the Leased Premises form a part), and to all renewals, modifications, consolidations, participations, replacements, and extensions thereof The term "mortgage(s)" as used herein shall be deemed to include trust indenture(s), deed(s) of trust, and security deed(s) Tenant agrees to attorn to any underlying ground lessor or mortgagee who shall succeed to Landlord's interest in this Lease upon request of such ground lessor or mortgagee Upon request of Landlord, Tenant shall promptly execute and acknowledge, without charge therefor, an agreement acknowledging such subordination and agreeing to attorn to any underlying ground lessor or mortgagee who shall succeed to Landlord's interest in this Lease

If any mortgagee requires that this Lease be prior rather than subordinate to any such mortgage, Tenant shall, promptly upon request therefor by Landlord or such mortgagee, and without charge therefor, execute a document effecting and/or acknowledging such priority, which document shall contain, at the option of such mortgagee, an attornment obligation to the mortgagee as Landlord in the event of foreclosure or to any party acquiring title through such mortgage in such event

Upon request of any mortgagee of record, Tenant shall give prompt written notice in the manner provided in Section 12 15 of any default of Landlord hereunder, and Tenant shall allow such mortgagee a reasonable length of time (in any event, not less than sixty (60) days from the date of such notice) in which to cure any such default Any such notice shall be sent to the Mortgage Loan Department of any such mortgagee at its home office address

## ARTICLE XI
## DEFAULT BY TENANT

**Section 11.1 Default.** Tenant shall be in default hereunder if (1) Tenant fails to pay without any setoff or deduction whatsoever when due Minimum Annual Rent and any other sums due under this Lease and such failure shall continue for more than five (5) days after written notice from Landlord to Tenant, or (2) Tenant fails to observe and perform any of the other terms, covenants and/or conditions of this Lease and such failure shall continue for more than ten (10) days after written notice from Landlord to Tenant, or (3) Tenant fails to pay when due the Minimum Annual Rent and any other sums payable under this Lease three (3) or more times in any period of twelve (12) consecutive months, or (4) the Leased Premises shall be abandoned, deserted, vacated, or if Tenant fails to take possession of the Leased Premises and initially open for business to the public as required hereunder If the nature of a default under (2) above is such that it cannot reasonably be cured within the aforesaid time period, and work thereon shall be commenced within said period and diligently prosecuted to completion, then Landlord's rights under Section 11 2 shall be inapplicable The Leased Premises and all trade fixtures, equipment, and inventory therein shall be conclusively deemed abandoned by Tenant upon (a) fifteen (15) consecutive days' absence from the Leased Premises by Tenant or its agents (unless such absence results from fire or other casualty) together with the failure to pay Minimum Annual Rent, or (b) removal of all or a substantial portion of Tenant's trade fixtures, equipment, or inventory from the Leased Premises together with a failure to pay Minimum Annual Rent In such event and in addition to Landlord's remedies set forth in Section 11 2, Landlord may enter the Leased Premises and may remove all such remaining trade fixtures, equipment, and inventory at Tenant's expense All such property shall, at Landlord's option, become the property of Landlord, or said property may be placed in storage at Tenant's cost and expense, or sold or otherwise disposed of, in which event the proceeds of such sale or other disposition shall belong to Landlord

If at any time during the Term there shall be filed by or against Tenant or any successor tenant then in possession or any guarantor of either under this Lease, in any court pursuant to any statute either of the United States or of any state, a petition (i) in bankruptcy, (ii) alleging insolvency, (iii) for reorganization, (iv) for the appointment of a receiver, or (v) for an arrangement under the Bankruptcy Acts, or if a similar type of proceeding shall be filed, Landlord may terminate Tenant's rights under this Lease by notice in writing to Tenant, and thereupon Tenant shall immediately quit and surrender the Leased Premises to Landlord, but Tenant shall continue liable for the payment of rent and all other sums due hereunder

**Section 11.2 Landlord's Rights on Default.** In the event of any default by Tenant, Landlord may (1) apply the Security Deposit, if any, specified in Section 1 1(g) toward the satisfaction and cure of such a default, and/or (2) cure Tenant's default at Tenant's cost and expense, and/or (3) without terminating this Lease re-enter the Leased Premises and remove all persons and all or any property therefrom, by any suitable action or proceeding at law, or by force or otherwise, without being liable for any prosecution therefor or damages therefrom, and repossess and enjoy the Leased Premises, with all additions, alterations, and improvements, and Landlord may at its option, repair, alter, remodel, and/or change the character of the Leased Premises as it may deem fit, and/or (4) at any time relet the Leased Premises or any part or parts thereof, as the agent of Tenant or in Landlord's own right, and/or (5) terminate this Lease upon not less than three (3) days' written notice to Tenant The exercise by Landlord of any right granted in this Section shall not relieve Tenant from the obligation to make all rental

payments, and to fulfill all other covenants required by this Lease, at the time and in the manner provided herein, and, if Landlord so desires, all current and future rent and other monetary obligations due hereunder shall become immediately due and payable Tenant throughout the remaining Term hereof shall pay Landlord, no later than the last day of each month during the Term, the then current excess, if any, of the sum of the unpaid rentals and costs to Landlord resulting from such default by Tenant over the proceeds, if any, received by Landlord from such reletting, if any, but Landlord shall have no liability to account to Tenant for any excess Landlord shall not be required to relet the Leased Premises nor exercise any other right granted to Landlord hereunder, nor shall Landlord be under any obligation to minimize Tenant's loss as a result of Tenant's default If Landlord attempts to relet the Leased Premises, Landlord shall be the sole judge as to whether or not a proposed tenant is suitable and acceptable If Landlord relets the Leased Premises (no inference being made that Landlord is required to do so), then any proceeds from such reletting shall be applied in the following order of priority (a) to the payment of all expenses Landlord may have incurred in connection with reentering, ejecting, removing, dispossessing, reletting, altering, repairing, redecorating, subdividing or otherwise preparing the Leased Premises for said reletting, including court costs, attorney's and brokerage fees, (b) to the payment of any past-due indebtedness or obligations due hereunder from Tenant to Landlord, including the cost of debt collection, and (c) the residue, if any, to the payment of the on-going obligations of Tenant to Landlord pursuant to the terms and conditions of this Lease, and Tenant hereby waives all claims to any excess All of the foregoing shall bear Interest from the date incurred until the date of payment

In the event of a breach by Tenant of any of the covenants or provisions hereof, Landlord shall have, in addition to any other remedies which it may have, the right to invoke any remedy allowed at law or in equity to enforce Landlord's rights or any of them, as if re-entry and other remedies were not herein provided for With respect to any litigation arising out of this Lease, Tenant hereby expressly waives the right to a trial by jury and the right to file any countersuit or crossclaim against Landlord Tenant agrees that no demand for rent and no re-entry for condition broken and no notice to quit possession or other notices prescribed by statute shall be necessary to enable Landlord to recover such possession, but that all right to any such demand and any such re-entry and any notice to quit possession or other statutory notices or prerequisites are hereby expressly waived by Tenant

In the event Tenant is a corporation, partnership, or limited liability company, Tenant agrees prior to commencement of the Term to appoint an agent for service of process having an address in the state in which the Leased Premises are located and to continuously maintain such appointment during the Term In the absence of such appointment, Tenant hereby appoints the Secretary of State of the state in which the Leased Premises are located as its agent for service of process

**Section 11.3 Non-Waiver Provisions.** The failure of Landlord to insist upon a strict performance of any of the terms, conditions, and covenants herein shall not be deemed to be a waiver of any rights or remedies that Landlord may have and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions, and covenants herein contained except as may be expressly waived in writing

The maintenance of any action or proceeding to recover possession of the Leased Premises, or any installment or installments of rent or any other moneys that may be due or become due from Tenant to Landlord, shall not preclude Landlord from thereafter instituting and maintaining subsequent actions or proceedings for the recovery of possession of the Leased Premises or of any other moneys that may be due or become due from Tenant Any entry or re-entry by Landlord shall not be deemed to absolve or discharge Tenant from liability hereunder

**Section 11.4** ***Force Majeure.*** If Landlord or Tenant is delayed or prevented from performing any of their obligations under this Lease by reason of strike or labor troubles or any cause whatsoever beyond either party's control, the period of such delay or such prevention shall be deemed added to the time herein provided for the performance of any such obligation by Landlord or Tenant, except for the payment of rent and all other monetary obligations payable by Tenant in accordance herewith

**Section 11.5 Enforcement Expenses.** If at any time Tenant shall be in default hereunder, and if Landlord shall deem it necessary to engage attorneys to enforce Landlord's rights hereunder, the determination of such necessity to be in the sole discretion of Landlord, Tenant will reimburse Landlord for court costs, reasonable attorney's fees (in both the trial court and appellate courts) and all other reasonable expenses

## ARTICLE XII
## OTHER PROVISIONS

**Section 12.1 Definition and Liability of Landlord.** The term "Landlord" as used in this Lease means only the owner or mortgagee in possession for the time being of the building in which the Leased Premises are located or the owner of a leasehold interest in said building and/or the land thereunder so that in the event of sale of said building or leasehold interest or an assignment of this Lease, or a demise of said building and/or land, Landlord shall be and hereby is entirely freed and relieved of all obligations of Landlord subsequently accruing

It is specifically understood and agreed that there shall be no personal liability of Landlord (nor Landlord's agent, if any) in respect to any of the covenants, conditions, or provisions of this Lease In the event of a breach

or default by Landlord of any of its obligations under this Lease, Tenant shall look solely to the equity of the Landlord in the Shopping Center for the satisfaction of Tenant's remedies

In addition hereto, it is specifically understood and agreed that Landlord's rights, privileges, duties, and obligations may be administered by Landlord's designee, including, but not limited to, Landlord's agent, and that such designee shall have the full authority of Landlord hereunder to perform all of Landlord's functions hereunder including, but not limited to, the execution of this Lease and any other related documentation

**Section 12.2 Relationship of the Parties.** Nothing contained in this Lease shall be deemed or construed as creating the relationship of principal and agent or of partnership or joint venture between the parties hereto, it being understood and agreed that neither the method of computing rent nor any other provision contained herein nor any acts of the parties hereto shall be deemed to create any relationship between the parties other than that of Landlord and Tenant If the named Landlord in this Lease is represented by an agent or managing agent, then Tenant agrees that the word "Landlord" shall be deemed to refer solely to such agent's principal

**Section 12.3 Security Deposit.** Tenant has deposited with Landlord as security for the performance by Tenant of the terms of this Lease the sum set forth in Section 1 1(g) hereof Landlord may use, apply on Tenant's behalf, or retain (without liability for interest) during the Term the whole or any part of the security so deposited to the extent required for the payment of any rent or other sum as to which Tenant may be in default hereunder or for any sum which Landlord may expend by reason of Tenant's default in respect of any of the terms of this Lease, including but not limited to any deficiency or damage incurred in reletting the Leased Premises The covenants in this Section 12 3 are personal covenants between Landlord and Tenant and not covenants running with the land, and in no event will Landlord's mortgagee(s) or any purchaser at a foreclosure sale or a sale in lieu of foreclosure be liable to Tenant for the return of the security deposit After each application from Tenant's security deposit, Tenant shall upon demand replenish said deposit to the amount set forth in Section 1 1(g)

Provided Tenant shall comply with all the terms of this Lease, such security shall be returned to Tenant upon termination of this Lease and after surrender of possession of the Leased Premises to Landlord In the event of a sale of the Shopping Center or assignment of this Lease by Landlord to any person other than a mortgagee, Landlord shall have the right to transfer the security to its vendee or assignee, subject to Tenant's aforesaid rights upon termination, and thereupon Landlord shall be released from any liability with respect to the return of such security to Tenant, such vendee or assignee to be solely responsible to Tenant therefor

Tenant shall not assign or encumber its interest in the security deposit, and neither Landlord nor its successors and assigns shall be bound by any attempted assignment or encumbrance

**Section 12.4 Indemnity.** Tenant agrees to indemnify and save Landlord and any ground and underlying lessor(s) of the Leased Premises harmless from and against any and all claims and demands (except such as result from the negligence of Landlord, or any such ground or underlying lessor(s) or their respective agents, contractors, servants, or employees, subject to Section 5 3) for, or in connection with, any accident, injury, or damage whatsoever caused to any person or property arising, directly or indirectly, out of the business conducted in or the use and/or occupancy of the Leased Premises or occurring in, on, or about the Leased Premises or any part thereof, or arising directly or indirectly, from any act or omission of Tenant or any concessionaire or sub-tenant or their respective licensees, servants, agents, employees, or contractors, and from and against any and all cost, expenses and liabilities incurred in connection with any such claims and/or proceedings brought thereon The comprehensive general liability and property damage coverage maintained by Tenant pursuant to this Lease shall specifically insure the contractual obligations of Tenant as set forth in this Section and/or as provided in this Lease

Tenant further agrees to defend, indemnify, and hold Landlord, any ground and underlying lessor(s) and any mortgagee harmless from all loss, damage, expense, fees, claims, costs, fines, penalties, and liabilities including, but not limited to clean up costs, remedial and monitoring costs, damages to the environment, attorneys' fees and costs of litigation, arising out of the Tenant's installation of any hazardous substances or violation of any hazardous substance law (as defined in Section 4 1 hereof) In the event insurance coverage is available, or becomes available, for the losses or liabilities described in this paragraph, Tenant shall furnish such coverage for the protection of both Tenant and Landlord (and any designees of Landlord)

The covenants of this Section 12 4 shall survive the termination or expiration of this Lease

**Section 12.5 Damage to Property or Persons** Landlord shall not be liable for any loss of or damage to property of Tenant or of others located in the Leased Premises or the Shopping Center, by theft or otherwise, nor for any loss or damage whatsoever to any property which Tenant could remove at the end of the Term as provided in Section 12 7 hereof Landlord shall not be liable for any injury or damage to persons or property or to the interior of the Leased Premises resulting from fire, explosion, falling plaster, steam, gas, electricity, water, rain, snow, or leaks from any part of the Leased Premises or from the pipes, appliances, or plumbing works or from the roof, street, or subsurface or from any other place or by dampness or by any other cause of whatsoever nature Landlord shall not be liable for any such injury or damage caused by other tenants or any person(s) either in the Leased Premises or elsewhere in the Shopping Center, or by occupants of property adjacent to the Shopping Center, or by the public, or by operations in the construction of any private, public, or quasi-public work Landlord

shall not be liable for any latent defect in construction except for a period of one (1) year from the date the general contractor constructing the Shopping Center substantially completes construction of the shell of the Leased Premises The parties agree that any liability of Landlord under the preceding sentence shall be limited to cost of repair only Landlord shall not be responsible for damage or loss of property of Tenant kept or stored on the Leased Premises, no matter how caused Notwithstanding anything contained herein to the contrary, Landlord shall be liable for its negligence, except as set forth in Section 5 3 hereof

**Section 12.6 Assignment, Subletting, or Licensing.**

**Section 12.6.1 Transfer, Assignment, Sublease, or License** Tenant shall not, voluntarily, involuntarily, or by operation of law, sell, mortgage, pledge, or in any manner transfer or assign this Lease in whole or in part, or sublet or license the whole or any part of the Leased Premises, or permit any other persons or entity to occupy same without the consent* of Landlord, references elsewhere herein to assignees, subtenants, licensees, or other persons or entities notwithstanding In the event that Tenant requests permission to either assign this Lease, or to sublet or license the whole or any part of the Leased Premises, or this Lease is deemed to be assigned pursuant to Section 12 6 2 of this Lease, then Landlord may, in its sole and absolute discretion, elect to consent or withhold consent If Landlord's consent is obtained (no inference being intended herein that Landlord is in any way obligated to grant such consent), then, in addition to such other conditions as Landlord shall have then imposed, if any, such assignment or subletting or licensing shall be subject to and conditioned upon the following

* Said consent cannot be unreasonably withheld. D (4)

(a) at the time of any such proposed assignment or subletting or licensing, Tenant shall not be in default under any of the terms, conditions, or covenants of this Lease, and,

(b) the proposed assignee or sublessee or licensee shall occupy the Leased Premises and conduct its business in accordance with the terms, conditions, and covenants of this Lease, including the use specified in Section 1 1(e) hereof, and,

(c) that if the Minimum Annual Rent or any additional rent or charges required to be paid by any such proposed assignee or sublessee or licensee exceeds the Minimum Annual Rent and/or items of additional rent reserved hereunder, then Tenant shall pay to Landlord monthly the entire amount of such excess, which shall be deemed additional rent, and,

(d) Tenant and its proposed assignee or sublessee or licensee shall execute, acknowledge, and deliver to Landlord a fully executed counterpart of a written assignment of lease or sublease or license, as the case may be, duly consented to by any Guarantor of this Lease by the terms of which,

(i) in case of an assignment, Tenant will assign to such proposed assignee Tenant's entire interest in this Lease, together with all prepaid rents hereunder, and the proposed assignee will accept said assignment and assume and agree to perform, directly for the benefit of Landlord, all of the terms, conditions, and covenants of this Lease on Tenant's part to be performed hereunder, or,

(ii) in case of a subletting or licensing, the sublease or license will in all respects be subject and subordinate to all of the terms, conditions, and covenants of this Lease, it being understood that Landlord shall have the right to prohibit such sublease or license if in the opinion of Landlord or its counsel such sublease or license would result in income to Landlord which is not "rents from real property" as defined in Section 856(d) of the INTERNAL REVENUE CODE OF 1986, as amended, and the proposed sublessee or licensee will agree to be bound by and to perform all of the terms, conditions, and covenants of this Lease on Tenant's part to be performed hereunder, except the payment of Minimum Annual Rent and all items of additional rent reserved hereunder, which Tenant shall continue to pay to Landlord, and,

(e) notwithstanding any assignment or subletting or licensing under the terms of this Article, both Tenant and any Guarantor of this Lease will acknowledge that, notwithstanding such assignment or sublease or license and the consent of Landlord thereto, both Tenant and any Guarantor of this Lease will not be released or discharged from any liability whatsoever under this Lease and will continue to remain liable thereon with the same force and effect as though no assignment or sublease had been made, and,

(f) Tenant shall pay to Landlord or Landlord's designee Landlord's administrative costs, overhead, and fees of counsel in connection with each such assignment, sublease, or license in the amount of Three Hundred Fifty Dollars ($350 00)

The acceptance of rent from any other entity shall not be deemed to be a waiver of any of the provisions of this Lease or to be a consent to the assignment of this Lease or the subletting or licensing of the Leased Premises

**Section 12.6.2 Transfer of Stock or Interest of Tenant or Guarantor** If at any time during the Term of this Lease, any part or all its outstanding voting stock, if Tenant is a corporation, or any interest in the partnership, if Tenant is a partnership, shall be transferred by sale, assignment, bequest, inheritance, operation of law, or other dispositions so as to result in a change in the present effective voting control of Tenant by the

person or persons owning a majority of said outstanding voting stock or a majority interest in the partnership, as the case may be, on the date of this Lease, then such event shall constitute an assignment for the purposes of this Lease

In the event there is a Guarantor of this Lease, then if at any time during the Term of this Lease,

(a) any part or all of such Guarantor's outstanding voting stock, if such Guarantor is a corporation, or any interest in the partnership, if such Guarantor is a partnership, shall be transferred by sale, assignment, bequest, inheritance, operation of law, or other dispositions so as to result in a change in the present effective voting control of such Guarantor by the person or persons owning a majority of said outstanding voting stock or a majority interest in the partnership, as the case may be, on the date of this Lease, or,

(b) such Guarantor is dissolved,

Tenant shall so notify Landlord Such notice shall be effective in accordance with this Section 12 6 2 only if said notice shall include or state all of the following (1) that said notice is given pursuant to Section 12 15 of this Lease, (2) the occurrences giving rise to such notice, stated with particularity as to the effective dates, parties involved or affected and the shares or interests affected, (3) in the event of a transfer of shares or a partner's interest, a recent financial statement (certified by an independent Certified Public Accountant) of the transferee(s), and (4) that Landlord shall have thirty (30) days from receipt of such notice to terminate this Lease as described herein

Landlord shall have the right, at its option, to terminate this Lease by notice to Tenant given within thirty (30) days after Landlord's receipt of such notice from Tenant In the event Landlord receives other notice of such transfer or of the dissolution of such Guarantor, then Landlord shall have the right, at its option, within ninety (90) days after receipt of such other notice, to terminate this Lease or to declare a default pursuant to Article XI of this Lease

The foregoing provisions shall not apply to that portion of the outstanding voting stock which is listed on a National Securities Exchange as defined in the Securities Exchange Act of 1934, as amended For the purposes of this Section 12 6 2, stock ownership shall be determined in accordance with the principles set forth in Section 544 of the Internal Revenue Code of 1954, as the same existed on August 16, 1954, and the term "voting stock" shall refer to the shares of stock regularly entitled to vote for the election of directors of the corporation

**Section 12.6.3 Assignment to Parent, Subsidiary, Affiliated Corporation of Tenant** Notwithstanding anything in this Article XII to the contrary, Tenant shall have the unrestricted right to assign this Lease to its parent corporation or to any subsidiary or affiliated corporation or to a corporation which directly or indirectly owns at least fifty percent (50%) interest in Tenant or in which Tenant owns at least fifty percent (50%), provided that Tenant shall deliver to Landlord within ten (10) days after the date of such assignment, an executed copy of the assignment wherein such parent corporation, subsidiary, affiliated corporation, or the corporation which directly or indirectly owns fifty percent (50%) interest in Tenant or in which Tenant owns at least a fifty percent (50%) interest, assumes for the benefit of Landlord all of the obligations of Tenant under this Lease and further provided that any such assignment shall not relieve Tenant from liability for the payment of rent or other sums herein provided or from the obligation to keep and be bound by the terms, conditions, and covenants of this Lease In the event such parent, subsidiary, or affiliated corporation or the corporation which directly or indirectly owns at least fifty percent (50%) interest in Tenant or in which Tenant owns at least a fifty percent (50%) interest shall at any time after the date of such assignment no longer be a parent, subsidiary, or affiliated corporation or the corporation which directly or indirectly owns at least a fifty percent (50%) interest in Tenant or in which Tenant owns at least a fifty percent (50%) interest, then such an event shall constitute an assignment for the purposes hereof and shall be subject to the provisions of Section 12 6 1

**Section 12.6.4 Assignment in Instances of Merger, Consolidation, Acquisition** Notwithstanding anything contained in this Article XII to the contrary, Tenant shall have the right to assign this Lease to any corporation into which Tenant may merge or to any corporation arising out of consolidation of Tenant with another corporation or to a corporation or other entity acquiring all or substantially all the assets of Tenant or all of the issued and outstanding voting stock of Tenant Such right to assign this Lease shall be expressly conditioned upon Tenant's delivering to Landlord, within ten (10) days after the date of such assignment, evidence that the corporation into which Tenant may merge or the corporation arising out of a consolidation of Tenant with another corporation or such acquiring corporation or other entity, as the case may be, has a net worth and financial condition equal to or greater than the net worth and financial condition of Tenant as of the date of this Lease or as of the date of such assignment, whichever is greater, in a form reasonably acceptable to Landlord wherein the corporation into which Tenant may merge or the corporation arising out of a consolidation of Tenant with another corporation or such acquiring corporation or other entity, as the case may be, assumes for the benefit of Landlord all of the terms, conditions, and covenants set forth in this Lease to be observed and performed by Tenant and agrees to be bound by the terms, conditions, and covenants of this Lease Any such assignment shall not relieve Tenant from liability for the payment of rent or other sums herein provided or from the obligation to keep and be bound by the terms, conditions, and covenants of this Lease





**Section 12.7 Surrender of Premises and Holding Over.** At the expiration of the tenancy hereby created, Tenant shall surrender the Leased Premises in good condition, reasonable wear and tear excepted, and damage by unavoidable casualty excepted to the extent that the same is covered by Landlord's All Risk (except for those items specifically excluded) Coverage, and Tenant shall surrender all keys for the Leased Premises to Landlord at the place then fixed for the payment of rent and shall inform Landlord of all combinations on locks, safes, and vaults, if any, in the Leased Premises Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of the Term of this Lease If Tenant shall default in so surrendering the Leased Premises, Tenant's occupancy subsequent to such expiration, whether or not with the consent or acquiescence of Landlord, shall be deemed to be that of a tenancy at will and in no event from month to month or from year to year, and it shall be subject to all the terms, covenants, and conditions of this Lease applicable thereto, except that Minimum Annual Rent shall be twice the amount payable in the last year of the Term, and no extension or renewal of this Lease shall be deemed to have occurred by such holding over

Prior to the expiration or sooner termination of this Lease, Tenant shall remove any and all trade fixtures, equipment and other unattached items which Tenant may have installed, stored, or left in the Leased Premises or elsewhere in the Shopping Center, including but not limited to counters, shelving, show cases, chairs, and unattached movable machinery purchased or provided by Tenant and which are susceptible of being moved without damage to the building At Landlord's request, facia, canopy, and undercanopy signage installed by Tenant or for Tenant at Tenant's expense shall be professionally removed at Tenant's expense If vinyl or fabric canopy signage is utilized in the Shopping Center, a blank panel shall be professionally installed in its place by Tenant at Tenant's expense Tenant shall repair any damage to the Leased Premises caused by its removal of such fixtures, movables, and signs In the event Tenant does not make such repairs, removals, and replacements, Tenant shall be liable for and agrees to pay Landlord's costs and expenses in making such repairs, together with a sum equal to twenty percent (20%) of such costs and expenses to cover Landlord's overhead in making such repairs for Tenant

Tenant shall not remove any plumbing or electrical fixtures or equipment, heating or air-conditioning equipment, floor coverings (including but not limited to wall to wall carpeting), walls, or ceilings, all of which shall be deemed to constitute a part of the freehold and/or leasehold interest of Landlord, nor shall Tenant remove any fixtures or machinery that were furnished or paid for by Landlord (whether initially installed or replaced), provided, however, on Landlord's written request, Tenant shall, at its expense, remove any hazardous substances installed or placed in the Leased Premises or the Shopping Center by Tenant, its agents, employees, subtenants, assignees, licensees or contractors and any alterations or additions which were added to the Leased Premises for Tenant's particular use and/or occupancy The Leased Premises shall be left in a broom-clean condition If Tenant shall fail to remove its trade fixtures or other property as provided in this Section 12 7, such fixtures and other property not removed by Tenant shall be deemed abandoned by Tenant and at the option of Landlord shall become the property of Landlord, or at Landlord's option may be removed by Landlord at Tenant's expense plus twenty percent (20%) as hereinabove provided, or placed in storage at Tenant's expense, sold, or otherwise disposed of, in which event the proceeds of such sale or other disposition shall belong to Landlord

**Section 12.8 Lien of Landlord for Rent, Taxes and Other Sums.** Landlord shall have, and Tenant hereby grants, a security interest in any furnishings, equipment, fixtures, inventory, accounts receivable, chattel paper, documents, instruments, and goods which are or are to become fixtures, together with all items now or hereafter affixed thereto, wherever located, whether now owned or existing or hereafter acquired or arising, and all cash and non-cash proceeds of the foregoing, including but not limited to insurance proceeds The security interest is granted for the purpose of securing the payment of rent, other charges, assessments, penalties, and damages herein covenanted to be paid by Tenant, and for the purpose of securing the performance of all other obligations of Tenant hereunder Upon Tenant's default or breach of any covenants of this Lease, Landlord shall have all remedies available under the law of the State where the Leased Premises are located, including but not limited to the right to take possession of the above mentioned property and dispose of it by sale in a commercially reasonable manner Tenant hereby agrees to execute and deliver from time to time Financing Statements at Landlord's request for the purpose of serving notice to third parties of the security interest herein granted Tenant shall upon demand reimburse Landlord for all filing and recording fees and taxes incurred in connection with filing and recording such Financing Statements In addition, Tenant agrees to pay as an administrative charge, the amount of Three Hundred Fifty Dollars ($350 00) for the review and/or processing of any Subordination of Landlord's Lien agreements

**Section 12.9 Liens.** Tenant shall discharge or bond over any lien filed against the Shopping Center or any part thereof for work done or materials furnished with respect to the Leased Premises within ten (10) days after such lien is filed and Tenant shall obtain execution of lien waivers prior to commencement of construction in the Leased Premises If Tenant fails to keep this covenant, in addition to any other remedies available to Landlord under this Lease or otherwise, Landlord may at its option discharge such lien, in which event Tenant agrees to pay Landlord a sum equal to the amount of the lien thus discharged plus Landlord's internal administrative costs, attorneys' fees, expenses, and damages thereby caused Landlord

**Section 12.10 Landlord's Right of Cancellation.** ~~If Tenant shall fail to pay Percentage Rent in an amount equal to at least twenty-five percent (25%) of the Minimum Annual Rent payable pursuant to Section 1 1(c) in at least one (1) of any year after the fourth (4th) year of the Lease Term (including any extension or renewal thereof), then Landlord may, at its option, elect to terminate this Lease by notice to Tenant given within six (6)~~

~~months after the end of such year and this Lease shall terminate and be null and void one hundred twenty (120) days after delivery of such notice Tenant may render such notice of termination inoperative if Tenant shall, within thirty (30) days after receipt of such notice, agree in writing to increase the Minimum Annual Rent payable for the then-current year of the Lease Term and each year thereafter by an amount equal to twenty five percent (25%) of the Minimum Annual Rent payable for such current year of the Lease Term and each year thereafter~~

**Section 12.11 Interest.** Whenever this Lease refers to "Interest," same shall be computed at a rate equal to the Prime Rate (as hereinafter defined) plus two (2) percentage points If, however, payment of interest at such rate should be unlawful, that is, violative of usury statutes or otherwise, then "Interest" shall, as against such party, be computed at the maximum legal rate payable by such party

"Prime Rate" shall mean the Prime Rate as published in ***The Wall Street Journal*** from time to time (or the average Prime Rate if more than one is published), any change in such Prime Rate to effect a change in the rate charged hereunder on the date of each such change If ***The Wall Street Journal*** ceases to be published or ceases to publish a Prime Rate, then Landlord shall designate another publication

**Section 12.12 Late Payments.** Should Tenant fail to pay when due an installment of Minimum Annual Rent, Percentage Rent, or any other sum payable to Landlord under the terms of this Lease, then Interest shall accrue from and after the date on which any such sum shall be due and payable, and such Interest together with a Late Charge of **Two Hundred Dollars ($200.00)** to cover the extra expense involved in handling such delinquency shall be paid by Tenant to Landlord at the time of payment of the delinquent sum

**Section 12.13 Consents.** With respect to any provision of this Lease which either provides or is held to provide that Landlord shall not unreasonably withhold or unreasonably delay any consent or approval, Tenant shall not be entitled to make any claim for, and Tenant hereby expressly waives, any claim for damages, it being understood and agreed that Tenant's sole remedy therefor shall be an action for specific performance

**Section 12.14 Waiver of Right of Redemption.** Tenant hereby expressly waives any and all rights of redemption conferred by statute or otherwise

**Section 12.15 Notices.** Whenever notice shall be given by either party to the other, notice shall be in writing addressed to the address of the party being notified at the address set forth in this Lease or to such other address as a party may from time to time designate by notice to the other party Notice may be given by hand delivery, express service, electronic means, or by postage paid certified or registered mail with return receipt requested Notice given by hand delivery, express service, or electronic means shall be deemed to have been given upon receipt by the party being notified Notice given by certified or registered mail shall be deemed to have been given at the time return receipt is signed for, provided, however, that if delivery is refused or the notice is unclaimed, notice shall be deemed received five (5) days after the same shall have been deposited in the mail

**Section 12.16 No Broker.** Tenant and Landlord warrant and represent that no broker was involved on either's behalf in negotiating or consummating this Lease, and agree to indemnify and hold the other harmless from and against any and all claims for brokerage commissions arising out of any communications or negotiations had by either with any broker regarding the Leased Premises or any other premises in the Shopping Center and/or the consummation of this Lease

**Section 12.17 Short Form Lease.** Tenant agrees not to record this Lease without the express written consent of Landlord and further agrees to execute, acknowledge, and deliver at any time after the date of this Lease, at the request of Landlord, a "short form lease" suitable for recording

**Section 12.18 Entire and Binding Agreement.** This Shopping Center Lease contains all of the agreements between the parties hereto, and it may not be modified in any manner other than by agreement in writing signed by all the parties hereto or their successors in interest The terms, covenants, and conditions contained herein shall inure to the benefit of, and be binding upon, Landlord and Tenant and their respective successors and assigns, except as may be otherwise expressly provided in this Lease Tenant acknowledges that neither Landlord nor any broker has made any representations to, or agreements with, Tenant which are not contained in this Lease The parties hereto specifically agree that this Lease has been negotiated as an arm's-length transaction, that each party had the benefit of being or the opportunity to be represented by legal counsel, that this document as executed by the parties evidences the agreement between the parties, and that no weight of construction shall be given to one party or another as the drafter of this Lease

**Section 12.19 Provisions Severable.** If any term or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law

**Section 12.20 Captions, Underlining, Line-Outs.** The captions contained herein are for convenience and reference only and shall not be deemed as part of this Lease or construed as in any manner limiting or

amplifying the terms and provisions of this Lease to which they relate The underlining of certain portions of this Lease shall not mean that such portions are to be given any greater or lesser force or effect than the non-underlined portions Any portion of this Lease which has been lined out was the agreement of the parties to eliminate and the language of any such lined-out provisions shall be given no force and effect whatsoever

**Section 12.21 Rule Against Perpetuities.** If the Term of this Lease shall not have commenced within five (5) years from the date appearing on Page 1 of this Lease, then this Lease shall thereupon become null and void and have no further force and effect whatsoever in law or equity

**Section 12.22 Warranty and Authority** Tenant hereby represents and warrants to Landlord that (a) there are no proceedings pending nor to Tenant's knowledge threatened before any court or administrative agency that would materially adversely affect the financial condition of Tenant or the ability of Tenant to enter into Lease or the validity or enforceability of this Lease, (b) there is no provision of any existing mortgage, indenture contract or agreement binding on Tenant which would conflict with or in any way prevent the execution, delivery or performance of the terms of this Lease by Tenant, (c) any financial statements of Tenant provided to Landlord in connection with this Lease are true, complete and correct in all material respects, fairly present the financial condition of Tenant as of the date and for the period referral to therein now have been prepared in accordance with generally accepted accounting principles consistently applied, and (d) there has been no material adverse change in the financial condition of Tenant since the date of such financial statements and to the knowledge of Tenant, no such material adverse changes are pending or threatened Tenant acknowledges that Landlord is executing this Lease in reliance upon the foregoing representations and warranties and that such representations and warranties are a material element of the consideration inducing Landlord to enter into and execute this Lease If this Lease is executed by more than one party (whether any such party is an individual or a corporation, partnership, limited partnership, joint venture, sole proprietorship or any other firm, person or entity), the parties executing this Lease shall be jointly and severally liable hereunder If Tenant is a corporation, partnership, limited liability company or other entity, the persons executing this Lease on behalf of Tenant represent and warrant to Landlord that they have the authority to enter into this Lease on behalf of Tenant, to bind Tenant and that this Lease has been authorized and approved by the Board of Directors or other governing body of Tenant

**Section 12.23 Irrevocable Offer.** In consideration of Landlord's administrative expense in considering this Lease and the terms of Tenant's proposed tenancy hereunder, Landlord's reservation of the Leased Premises pending such consideration and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Tenant's submission to Landlord of this Lease, duly executed by Tenant, shall constitute Tenant's irrevocable offer to continue for thirty (30) days from and after receipt by Landlord of the said Lease duly executed by Tenant or until Landlord shall deliver to Tenant written notice of rejection of Tenant's offer, whichever shall first occur If within said thirty (30) day period Landlord shall neither return the Lease duly executed by Landlord nor so advise Tenant of Landlord's rejection of Tenant's offer, then after said thirty (30) day period Tenant shall be free to revoke its offer, provided, however, Tenant's offer shall continue until (a) revoked by Tenant in writing or (b) accepted or rejected by Landlord

**Section 12.24 Rider To Lease.** A Rider to lease numbered consecutively herewith and attached hereto is hereby made a part hereof

3/16/99

I, Steven Ciancio, attest to the fact, that the signed Documents, pertaining to the lease at Town Center, Cortlandt, New York, is my authenticated signature

Steve Ciancio

Steve Ciancio
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 SS#
Ph# (914) 478-4034

Cortlandt Town Center

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this Lease as of the day and year first above written, each acknowledging receipt of an executed copy hereof

**LANDLORD:**

**CORTLANDT TOWN CENTER LIMITED PARTNERSHIP,** a New York limited partnership, Federal Identification Number 62-1631880, by CBL & Associates Management, Inc , a Delaware corporation, managing agent, Federal Identification Number 62-1542279

**ATTEST:**
(corporate seal)

Mildred W Hooper
*Print Name* Mildred W Hooper
Its Assistant Secretary

By Jim Dunn
*Print Name* Jim Dunn
Its Vice President-Community Centers
DATE 3-22-99

**TENANT:**

**TOWN CENTER DELI, INC.**

**ATTEST:**
(corporate seal)

______________________
*Print Name* ______________
Its ______________

By Steven Ciancio
*Print Name* STEVEN CIANCIO
Its PRESIDENT

**WITNESSES:**

______________________

______________________

DATE 3/6/99

Cortlandt Town Center

RIDER TO LEASE

Section 12 24 is added as a Rider to the Lease and made a part thereof

**Option to Extend.** This Lease, at the option of Tenant, exercised by written notice to Landlord given not less than one (1) year prior to the expiration of the initial Term, may be extended for one (1) period of five (5) years upon the terms and conditions set forth in this Lease, provided, however, the Minimum Annual Rent shall be increased to Fifty Two Thousand and No/100 Dollars ($52,000 00) per year for each year of the extension period, and Percentage Rent shall be an amount equal to six percent (6%) of Gross Sales in excess of a base of Eight Hundred Sixty Six Thousand Six Hundred and Sixty Seven and No/100 Dollars ($866,667 00) per year for each year of the first extension period and further provided that Tenant is not in default hereunder at the time of giving such notice and at the time any such extension period commences




# EXHIBIT A

Town Center Deli, Inc.
Space A-5
Approximately 2,000 sq.ft.




This exhibit is diagrammatic and is not to any specific scale. It is intended only for the purpose of indicating the location of the Leased Premises in the project. It does not purport to show the exact of final location of columns, division walls or other required architectural, structural, mechanical, or electrical elements. The Lessor reserves the right to eliminate or add and to make changes in the size or location of such elements as may be required from time to time.

Cortlandt Town Center

**EXHIBIT B**
CONSTRUCTION

Section 1 1 Condition of Premises (a) Tenant acknowledges that it has examined and inspected the Leased Premises, is familiar with the physical condition thereof, and finds same suitable for Tenant's purposes Tenant further acknowledges (i) that Landlord has not made and does not hereby make any representations regarding the physical condition of the other than as set forth herein Leased Premises or the Shopping Center, and (ii) that there are no warranties, either express or implied, regarding the condition of the Leased Premises and/or the Shopping Center Accordingly, Tenant hereby accepts the Leased Premises in their "AS IS" condition

(b) For the purpose of construing Landlord's obligations under Sections 8 1 and 8 2 of the Lease, Landlord's work referred to in said Sections shall be deemed to refer to the Leased Premises in the condition existing at the time of tender of possession, together with any additional items of Landlord's work specifically enumerated in this Exhibit Landlord warrants that the Leased premises are structurally sound and asbestos free

Section 1 2 Tenant's Plans and Specifications (a) In the event Tenant plans to improve, renovate or alter the Leased Premises, Tenant shall, within fifteen (15) days following the execution of this Lease, prepare at Tenant's sole cost and present to Landlord complete plans and specifications for work to be done to alter the Leased Premises in accordance with Tenant's requirements Failure by Tenant to submit its plans and specifications as herein required shall constitute an event of default under this Lease

(b) With regard to Tenant's plans and specifications Landlord may either (i) evidence its approval by endorsement to that effect by signature or initials on one (1) set of said plans and specifications and the return of such signed or initialed set to Tenant (whereupon such approved preliminary plans and specifications shall then constitute the final plans and specifications), or (ii) refuse such approval if Landlord shall determine that the same (A) do not conform to the standards of design, motif and decor established or adopted by Landlord and/or other tenants in the Shopping Center, and/or (B) would subject Landlord to any additional cost, expense or liability or the Leased Premises to any violation, fine, or penalty, and/or (C) would in any way adversely affect the reputation, character and/or nature of the Shopping Center, and/or (D) would provide for or require any installation or work which is or might be unlawful or create an unsound or dangerous condition or adversely affect the structural soundness of the Leased Premises and/or the building of which the Leased Premises are a part, and/or (E) interfere with or abridge the use and enjoyment of any adjoining space in the building in which the Leased Premises are located If Landlord refuses approval, Landlord shall advise Tenant of those revisions or corrections which Landlord requires, and Tenant shall within ten (10) days thereafter submit revised plans and specifications to Landlord for its approval in accordance with this Section In the event Tenant does not comply with the foregoing requirements, then Landlord may place Tenant in default

(c) Tenant shall at Tenant's cost and expense obtain all necessary permits and approvals from any governmental authority or agency having jurisdiction which are required for the performance of the work shown on the approved plans and specifications and Tenant's occupancy of the Leased Premises Tenant shall obtain all necessary permits, approvals, meters and hook-ups from the appropriate utility companies, and Tenant shall pay all fees, charges and deposits required in connection therewith

(d) Tenant's plans and specifications shall be prepared and sealed by an architect or engineer duly licensed in the state in which the Shopping Center is located If the drawings for Tenant's work are not prepared in accordance with the foregoing, Landlord shall have the right to cause the project architect to redraft, sign and seal Tenant's plans at Tenant's cost and expense

(e) No construction work shall be commenced by Tenant until Tenant receives prior written approval of the final plans and specifications from Landlord Approval of Tenant's plans and specifications by Landlord or Landlord's architect does not relieve Tenant of the responsibility to comply with the requirements of applicable codes and regulations All changes after final approval are subject to Landlord's prior written approval After approval by Landlord of Tenant's plans and specifications, Tenant shall pay for any additional architectural or construction costs incurred by Landlord in reviewing and/or making requested changes, substitutions or eliminations in such approved plans and specifications requested by Tenant Tenant shall pay for any architectural costs incurred by Landlord in connection with any subsequent remodeling, alteration, repair or rebuilding of the Leased Premises

(f) Nothing contained in this Lease or this Exhibit shall be deemed or construed in any way as constituting the consent or request of Landlord, express or implied, by inference or otherwise, to any contractor, subcontractor, laborer, mechanic or materialman, for the performance of any labor or the furnishing of any materials for any specific improvement, alteration or repair of the Leased Premises or any part thereof nor as giving Tenant a right, power or authority, as otherwise provided in this Lease or this Exhibit to contract for or permit the rendering of any services or the furnishing of any materials that would give rise to the filing of any mechanics' or materialmen's liens or claims of liens against the Leased Premises, Tenant's interest therein, or the Shopping Center

Section 1 3 Sign Criteria (a) Signs are to be furnished and installed by Tenant and approved by Landlord's architect Tenant's sign contractor or architect must submit a colored rendering of Tenant's sign prior to approval Tenant's sign shall be located within the limits of Tenant's storefront and shall not project more than

8" beyond the storefront if the Shopping Center is a mall, and not more than 12" beyond the storefront if the Shopping Center is a strip center

(ii) Strip Centers

| | | |
|---|---|---|
| (A) | Up to 30' storefront | Capitals - 36"<br>Lower case - 18" |
| (B) | 30'-1" and greater storefront | Capitals - 30"<br>Lower case - 24" |

(a) The length of Tenant's sign shall be limited to 70% of Tenant's storefront

(b) All conduit, wiring for and connection to sign shall be furnished by Tenant

(c) No flashing signs or exposed neon tubing permitted

(d) In a mall no outdoor signs permitted without Landlord's prior written approval

(e) All signs shall be composed of individually lighted, separate letters, provided, however, in a strip center an internally illuminated aluminum box, finished on all exposed faces, with sign letters individually cut into the face panel, and with plexiglas letters may be permitted by Landlord

(f) In a strip center, under-canopy sign design shall be as designated by Landlord

Section 1 4 <u>Construction by Tenant</u> (a) Tenant shall perform at Tenant's sole cost and expense all construction work required to complete the Leased Premises in accordance with the plans and specifications approved as herein provided No construction shall be commenced by Tenant prior to Tenant's compliance with the requirements of this Exhibit and Landlord's written authorization and consent to the commencement of work in the Leased Premises All construction work shall comply with applicable building, fire and underwriter's codes and shall be performed in a workmanlike manner

(b) Anything in this Exhibit to the contrary notwithstanding, all roof penetrations and roof restoration as well as the installation of all structural supports shall be performed at Tenant's expense by the roofing contractor who performed the roofing work upon the initial construction of the Shopping Center or by such roofing contractor as Landlord may designate Upon completion of said roofing work the roofing contractor shall furnish a letter addressed to Landlord stating that the work done in accordance with Tenant's approved plans and specifications has not affected the roof bond or guaranty for the Shopping Center roof

(c) Tenant's general contractor shall be subject to Landlord's prior written approval, which approval may be withheld in Landlord's sole discretion Tenant and Tenant's contractor shall comply with the requirements set forth in this subsection (c) Tenant and Tenant's contractor shall enter into a construction contract in the form of the current edition of Document A101 or A107 of The American Institute of Architects in which the contractor agrees, to perform Tenant's work required hereunder Said contract shall be subject to Landlord's prior written approval Said contract shall provide, among other things, as follows

(i) That notwithstanding anything contained in the Contract Documents to the contrary, the Contractor will perform the work and furnish the materials required therefor on the sole credit of Tenant, that no lien for labor or materials will be filed or claimed by the Contractor against the Shopping Center premises of which the Leased Premises are a part or against the Leased Premises, that the Contractor will discharge any such lien filed or claims by any person or entity that furnishes labor or materials to the Leased Premises, and that the Contractor will indemnify and save Landlord harmless from any and all costs and expenses, including reasonable attorney's fees, suffered or incurred as a result of any such lien that may be filed or claimed in connection with or arising out of the work,

(ii) That the Contractor shall furnish the following satisfactory in form and substance to Landlord prior to commencement of the work (A) ~~a payment bond and a performance bond in the amount of the contract issued by a bonding company acceptable to Landlord licensed in the state where the Shopping Center is located wherein Landlord is named a co obligee, or a guaranty of such construction in the form and executed by such persons as Landlord may require,~~ (B) a lien waiver executed by the Contractor, lien waivers executed by all subcontractors, and lien waivers executed by all materialmen who will furnish materials in excess of One Hundred Dollars ($100 00) in the aggregate, and (C) a letter executed by the Contractor which provides in substance that the Contractor will not permit its workmen and subcontractors to create any disharmony or interfere with any workmen, contractors or subcontractors working in the Shopping Center, that either Landlord or Tenant shall have the right to suspend work under said contract on twenty-four (24) hours notice until any such condition ceases, and that either Landlord or Tenant shall have the right to terminate said contract without liability if any such condition continues for thirty (30) days,

(iii) That the Contractor shall furnish Tenant and Landlord with certificates of insurance setting forth the following coverages (A) workmen's compensation insurance with limits of not less than Five Hundred

Thousand Dollars ($500,000 00), (B) bodily injury, including death, with limits of $500,000 00 per person and $1,000,000 00 per occurrence, (C) property damage, with limits of $1,000,000 00, (D) motor vehicle liability and property damage in the amounts set forth in (B) and (C), and (E) Builder's Risk Insurance in the full amount of the Replacement Cost on an Agreed Amount Basis, for which Tenant may self insure

(iv) That the Contractor shall be responsible from the time of his execution of the agreement or from the time of the beginning of the first work, whichever shall be earlier, for all injury or damage of any kind resulting from the work to persons or property In addition to the liability imposed upon the Contractor on account of personal injury (including death) or property damage suffered through the Contractor's negligence, which liability is not impaired or otherwise affected hereby, the Contractor shall assume the obligation to save Landlord harmless and to indemnify Landlord from every expense, liability, or payment arising out of or through injury (including death) to any person or persons or damage to property of any person at any place in which work is located arising out of or suffered through any act or omission of the Contractor or any Subcontractor, or any one either (A) directly or indirectly employed by or (B) under the supervision of any of them in the prosecution of the work, and

(v) That the Contractor shall at all times keep the Leased Premises and adjacent areas free from accumulation of waste materials or rubbish caused by its operations The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the work and shall take all necessary precautions for the safety of, and shall provide all necessary protection to prevent damage, injury or loss to (A) all employees on the work and other persons who may be affected thereby, including without limitation licensees and invitees of the Shopping Center and other tenants in the Shopping Center, (B) all the work and other materials and equipment to be incorporated therein, and (C) other property at the site or adjacent thereto Such precautions shall include, but shall not be limited to, the furnishing of guard rails, barricades and the securing of the Leased Premises

(d) Tenant's general contractor shall insure that all trash, waste and refuse from its work in the Leased Premises is deposited at designated collection points in the Shopping Center and shall pay to Landlord, prior to the time of commencement of work in the Leased Premises, the sum of Ninety-Seven Cents ($ 97) per square foot of floor area in the Leased Premises for disposal of said trash, waste and refuse

(e) If Landlord furnishes temporary electric power to the Leased Premises, Tenant's general contractor shall pay to Landlord at the time of commencement of work in the Leased Premises, and on the first day of each month thereafter in which such temporary electric power is provided, the sum of Nine Cents ($0 09) per square foot per month or partial month for such temporary electric power for construction purposes, provided, however, if Tenant uses permanent power (including HVAC) available in the Leased Premises, Tenant's usage of such permanent power (including HVAC) shall be paid at the currently established rate commencing on the first day of such usage in lieu of the temporary electric power charge

Cortlandt Town Center

**GUARANTY OF LEASE**

In consideration of the foregoing Lease between **Corlandt Town Center Limited partnership**, a New York limited partnership, as Landlord and **Town Center Deli, Inc.**, as Tenant and to induce Landlord to enter into said Lease, the undersigned, jointly and severally if there be more than one (collectively, "Guarantor"), covenants and agrees as follows

1 Guarantor hereby unconditionally and absolutely guarantees to Landlord the prompt and full payment of rent and all other sums due to Landlord under said Lease and the prompt and complete performance of all covenants contained in said Lease on the Tenant's part to be performed Guarantor agrees to indemnify and hold Landlord harmless from any loss, costs or damages arising out of Tenant's failure to pay the aforesaid rent and other sums and/or the Tenant's failure to perform any of the aforesaid covenants

2 Guarantor waives diligence, demand for payment or performance, extension of time of payment or performance, notice of acceptance of this Guaranty, notice of nonpayment, nonperformance and indulgences, and notices of every kind and consents to any and all forbearances and extensions of the time of payment and performance, and to any and all modifications in the terms, covenants and conditions of said Lease hereafter made or granted and to all extensions and assignments thereof Guarantor waives all right of subrogation whatsoever with respect to any collateral securing the aforesaid obligations

3 Guarantor agrees that its obligations hereunder are primary and agrees that this Guaranty may be enforced by Landlord without first resorting to or exhausting any other remedy, security or collateral, provided, however, that nothing herein contained shall prevent Landlord from suing on the aforesaid obligations with or without making the Guarantor a party to the suit or exercising any other rights under said Lease, and if such suit or any other remedy is availed of only the net proceeds therefrom, after deduction of all charges and expenses of every kind and nature whatsoever, shall be applied in reduction of the amount due on the aforesaid obligations No action brought under this Guaranty and no recovery in pursuance thereof shall be a bar or defense to any further action which may be brought under this Guaranty by reason of any further default(s) hereunder or in the performance and observance of the terms, covenants and conditions of said Lease Guarantor agrees that a release or settlement with one or more of the persons or entities comprising Guarantor or Tenant shall not release any other Guarantor, and all such remaining Guarantors shall remain jointly and severally liable as though they were the only persons or entities executing this Guaranty Guarantor hereby submits to personal jurisdiction in the state where the Leased Premises are located for the enforcement of this Guaranty, and waives any and all personal rights under the laws of any state to object to jurisdiction within the state where the Leased Premises are located for the purposes of litigation to enforce this Guaranty In the event such litigation is commenced, Guarantor agrees that service of process may be made and personal jurisdiction over Guarantor obtained by serving a copy of the summons and complaint upon the Secretary of State of the state where the Leased Premises are located, who is hereby appointed Guarantor's agent for service of process

4 Guarantor agrees that the Guarantor's obligation to make payment in accordance with the terms of this Guaranty shall not be impaired, modified, changed, released or limited in any manner whatsoever by any impairment, modification, change, release or limitation of the liability of Tenant or its estate in bankruptcy (including without limitation any rejection of the Lease by Tenant or by any Trustee or Receiver in bankruptcy) resulting from the operation of any present or future provision of the National Bankruptcy Act, other similar statute, or from the decision of any court The liability of Guarantor shall not be affected by any repossession of the Leased Premises by Landlord

5 Guarantor agrees that in the event this Guaranty is placed in the hands of an attorney for enforcement, Guarantor shall reimburse Landlord for all expenses incurred, including expenses and reasonable attorney's fees incurred through the trial courts and all appeals

6 Guarantor agrees that this Guaranty shall inure to the benefit of and may be enforced by Landlord, its successors and assigns and any mortgagee(s) of the Leased Premises, and shall be binding and enforceable against the Guarantor and the Guarantor's legal representatives, successors and assigns

**IN WITNESS WHEREOF,** the Guarantor has executed this Guaranty this 6th day of March, 19 99

57 Maple Avenue
Hastings on Hudson, NY 10706

By [signature]
(Steven Ciancio)
Date 3/6/99

Social Security # 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